STATE, *ex rel.* CATHERINE M. HENRY, *et al.,* v.
CITY OF MIAMI, *et al.*

158 So. 82.
Opinion Filed December 12, 1934.

*Bart A. Riley* and *J. Aron Abbott,* for Plaintiffs in Error; *J. W. Watson, Jr.,* for Defendants in Error.

BROWN, J.—This writ of error is addressed to an order of the court below granting motion to quash an alternative writ of mandamus and dismissing the cause.

: The purpose of the writ was to compel the issuance of a building permit for the erection of a public hospital in the City of Miami, Florida, upon two adjoining lots fronting upon Brickell Avenue in said city which relator, Catherine M. Henry, had purchased for that purpose and had let a contract to the other relator for the construction of the proposed hospital. The proceedings involved the validity of an ordinance passed by the City Commission of the City of Miami making it unlawful to construct buildings for certain named business purposes, or mortuaries, or hospitals, within a described district or portion of the city which included that part of Brickell Avenue on which relator's property was located. This ordinance was adopted after the construction contract was let. The ordinance declared that its intention was to confine the described area to use for residential purposes.

The defendants in error contend that the City Commission had authority to adopt this ordinance under Section 5 of Chapter 14234 of the special Acts of 1929 (pp. 1352-1357). Plaintiffs in error contend that the title to Chapter 14234 is invalid in that it does not comply with Section 16 of Article III of the Constitution, and also that if the title is legally sufficient, said section of the Act never became legally effective because it was not properly described on the ballots for the referendum alleged to have been held under Section 9 of said Act. We have examined these contentions and cannot agree with the position taken by the plaintiff in error on either of these points.

The chief contention of plaintiff in error is that Section 5 of said Chapter 14234 (which Chapter amended Chapter 10847 in many particulars), required the City of Miami, in any action thereunder, to adopt one comprehensive zoning ordinance covering the entire city, which ordinance should provide a board of appeals, and that there-

fore the city was without authority to adopt an ordinance applying to property abutting on any one street, or embraced within only a comparatively small district of the city, and omitting any provision for a board of appeals. Said Section 5 amended Chapter 10847, which was an Act amending and re-enacting the charter of the City of Miami, by inserting after the third section of said Act a new section reading as follows:

"Section 3 (4). The Commission of the City of Miami may, by ordinance, provide regulations and restrictions governing the height, number of stories, and size of buildings and other structures, the percentage and portion of lot that may be occupied, the size of yards, courts, and other open spaces, and the location, use of buildings, structures, and land for trade, industry, residences, apartment houses and other purposes. Such regulations may provide for a board of appeals to determine and vary their application in harmony with their general purpose and intent, and in accordance with the general provisions of the ordinance."

It will be noticed that the language of this section is permissive and not mandatory or compulsory. It gives the City Commission the power to adopt by ordinance regulations and restrictions of the nature described in the Act, and also gives the City Commission power to provide for a board of appeals, but action is not compelled as to either. The ordinance here in question appears to have been authorized by the first sentence of the quoted section, and the mere fact that a board of appeals is not provided for does not invalidate the ordinance, for the reasons stated.

In the case of State, *ex rel.* Skillman, v. City of Miami, 101 Fla. 585, 134 So. 541, this Court sustained a single ordinance restricting or "zoning" parts of Brickell Avenue and Biscayne Boulevard against funeral homes, and said Section 5 of Chapter 14234, above referred to, was quoted.

from and treated as valid.   Mr. Justice BUFORD, who wrote
the opinion of the court in that case, among other things,
said :

· "The restricted districts established by the ordinance
here under consideration is shown to be the designated parts
of a certain avenue and certain boulevard in the City of
Miami, Florida, which avenue and boulevard constitute
parts of one of the most traveled and most expensive
thoroughfares in the South.   The restricted area consti-
tutes a very small portion of the great City of Miami.   In
this ordinance the city authorities have not attempted to
confine the right to conduct a mortuary or funeral home
within a limited area, but on the contrary, have by ordi-
nance excluded a very limited area of the city from being
used as the location for the operation or conduct of such
business."

Undoubtedly, where an act vesting the city with author-
ity to zone, or make regulations and restrictions which
amount to zoning, clearly evidences the legislative intent that
the authority and power thus vested can only be carried out
by one comprehensive zoning ordinance covering the entire
city, such intent must be observed, else the ordinance will
fall.   But, by our holding in the Skillman case above cited,
the City of Miami was not confined to the passage of one
comprehensive ordinance, zoning the entire territory of the
city, by the statutory provision above quoted.   In this con-
nection see State v. City of New Orleans, 154 La. 271, 97
So. 440.   Plaintiffs in error cite the case of City of Jack-
son v. McPherson (Miss.) 138 So. 604, in which very able
majority and minority opinions were written, but it ap-
pears from that opinion that the ordinance in question was
a general zoning ordinance passed by the governing author-
ities of the city in pursuance of a comprehensive standard
zoning statute.

It does not clearly appear from the facts set forth by the relators in the petition and alternative writ that the ordinance here in question was such an arbitrary and unreasonable exercise of the power vested in the city by the Legislature, or constituted such an unwarranted invasion of private property rights, as to render the same unconstitutional. Under the general principles laid down in Euclid v. Ambler Realty Co., 272 U. S., 365, 71 L. Ed. 303, and in the opinion by Mr. Justice TERRELL in the case of State *ex rel.* Taylor, v. City of Jacksonville, 133 So. 114, 101 Fla. 1241, and also in the opinion written by Mr. Justice BUFORD in the case of State, *ex rel.* Skillman, v. City of Miami, *supra,* we would not be justified in holding the ordinance here in question invalid, upon the facts as alleged in the alternative writ. In mandamus proceedings which is the remedy which was resorted to here, the relator must show his clear legal right to demand, and a clear legal duty on the part of the respondent to perform, an official ministerial act.

Our conclusion is that no reversible error appears and that the order of the Circuit Court quashing the alternative writ, as well as the order dismissing the cause, should be, and the same is hereby

Affirmed.

WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.

DAVIS, C. J., concurs specially in the result.

DAVIS, C. J. (concurring in result).—Section 5 of Chapter 14234, Special Acts 1929, Laws of Florida, amended a section of the Miami Charter to read as follows:

"Section 3 (4). The Commission of the City of Miami may, by ordinance, provide regulations and restrictions governing the height, number of stories, and size of buildings and other structures, the percentage and portion of lot that

may be occupied, the size of yards, courts, and other open spaces, and the location, use of buildings, structures, and land for trade, industry, residences, apartment houses and other purposes. Such regulations may provide for a board of appeals to determine and vary their application in harmony with their general purpose and intent, and in accordance with the general provisions of the ordinance."

The majority opinion construes this section as permissive, not mandatory or compulsory in its requirement that the city authorities shall enact a general zoning ordinance and provide a board of appeals incident thereto. The general law on the subject of "zoning" is otherwise. Metxenbaum—The Law of Zoning, Chapter III, page 20.

Zoning measures find their constitutional justification only when the police power is exerted in the interest of the public. There is no such thing as a general legislative power on the part of municipal authorities to control and direct how the private properties of municipal inhabitants shall be held or enjoyed. State of Washington v. Roberge, 278 U. S. 116, 49 Sup. Ct. Rep. 50, 73 L. Ed. 210; Euclid v. Amber Realty Co., 272 U. S. 387, 47 Sup. Ct. Rep. 118, 71 L. Ed. 303, Zahn v. Board of Public Works, 274 U. S. 325, 47 Sup. Ct. Rep. 594, 71 L. Ed. 1074; Corieb v. Fox; 274 U. S. 503, 47 Sup. Ct. Rep. 675, 71 L. Ed. 1228, 53 A. L. R. 1210; Nectow v. Cambridge, 277 U. S. 183, 48 Sup. Ct. Rep. 447, 72 L. Ed. 842.

Therefore in order to be constitutional under the due process clause of the Fourteenth Amendment to the Federal Constitution, zoning ordinances must be passed in aid of some "plan" that is general and comprehensive in character when they undertake not only to regulate temporary uses of property but the manner of permanent construction of the buildings erected on affected property. Euclid v. Amber Realty Co., 272 U. S. 387, supra; Eubank v.

Richmond, 226 U. S. 137, 33 Sup. Ct. Rep. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123  A zoning ordinance enacted simply as a piece of guesswork, with no attempt to study the city's problems and no effort to accomplish some general plan adapted to the city's needs in the way of health, safety, prosperity, welfare and the like, and attended by no surety of the existing situation to which it applies is generally unsustainable as a reasonable or valid police regulation.  Metzenbaum Law of Zoning, page 130.

Legislators may not, under the guise of the police power, impose restrictions that are unnecessary 'or unreasonable upon the use of private property or upon the pursuit of useful activities.  The right to devote one's real estate to any legitimate use 'is properly within the protection of the Constitution of the United States.  State of Washingon v. Roberge, 278 U. S. 116, 48 Sup. Ct. Rep. 50, 73 L. Ed. 210. And where an'Act of the Legislature is so framed that those to whom power is delegated are not bound to any definite standard of duty, but are free to withhold consent for selfish reasons, or arbitrarily and subject to their will and caprice, the statutory delegation so attempted in such unrestricted form is repugnant to the due process clause of the Fourteenth Amendment.  Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. Rep. 1064, 30 L. Ed. 220; Eubank v. Richmond, supra; State of Washington v. Roberge, supra; Browning v. Hooper, 269 U. S. 396, 46 Sup. Ct. Rep. 141, 70 L. Ed. 330.

It seems to me that Chapter 14234, Acts 1929, in its amendment to the city charter was passed in recognition of the fact that zoning ordinances can only be valid when passed to carry into execution some municipal plan comprehensive in character and ordained in the light of the surrounding facts as shown by a survey and study of the affected area.  To construe a statutory delegation of power

of this kind as warranting special and particular treatment of particular streets and areas, with no attempt to make any prescribed regulation comprehensive as to plan, would render the statute unconstitutional under the United States Supreme Court decisions as being an unlimited delegation of discretionary power to interfere with private property rights. Therefore I cannot agee with such constuction placed upon the statute in the majority opinion.

The constitutional necessity is not for a single comprehensive ordinance or statute but for some general comprehensive plan. Such plan must set up a standard capable of ascertainment by legal means and not leave consent to withhold approval as to particular persons or properties to the whim or caprice of the officials who may be temporarily vested with special authority to give or withhold consent to use one's property as one sees fit. As was pointed out in a very recent case decided by the United States Supreme Court (State of Washington v. Roberge, 278 U. S. 116, *supra*), every owner of municipal property has the constitutional right to devote his property to any legitimate use he may deem fit. And the exclusion by a zoning law of some *particular* legitimate use to which a particularly situated property might otherwise be put, is only warranted when subordination or limitation of the right to such particular use is *indispensable to the accomplishment of some general zoning plan!* In that case the Federal Supreme Court struck down a provision of law that undertook to authorize a limitation on the use of private property uncontrolled by any standard or rule prescribed by competent legislative authority in order to accomplish a general plan that the Legislature has determined should be accomplished for the benefit of the public health, safety, morals or general welfare.

In Euclid v. Amber Realty Co., 272 U. S. 387, *supra,*

it was held that an ordinance, which of its own force operates greatly to reduce the value of property by unconstitutionally depriving the owner of his liberty to use his property as he sees fit, is subject to injunction to prevent a present invasion of the property owner's rights, or a threat to so invade them. It was further held that it was not necessary to apply for a permit in order to raise the question, because a provision of law requiring application to be made for permits which attaches unreasonable or unlawful conditions to issuance of same, would be itself an unconstitutional invasion of property rights.

In the present case the correct decision of this controversy seems to rest in a large part upon a consideration of all of the surrounding facts and circumstances, in connection with a study of whatever may constitute the whole series of pertinent ordinances that are apparently in effect dealing with the subject of property restrictions in the City of Miami. Mandamus is wholly inappropriate as a remedy to determine rights resting on a showing of particular factual conditions, therefore it was properly denied. So I concur in affirmance of the judgment, but only on the ground that injunction and not mandamus is the appropriate remedy to reach an alleged unconstitutional deprivation of property which can only be decided in the light of the surrounding facts and circumstances that pertain to the particular property in controversy.

ELLIS, J., concurs.