## STANDARD OIL CO. v. CITY OF TAL-LAHASSEE, FLA.

### Civ. No. 235.

United States District Court
N. D. Florida, Tallahassee Division.
Nov. 30, 1949.

Ausley, Collins & Truett, Tallahassee, Fla., for plaintiff.

James Messer, Jr., City Attorney, Tallahassee, Fla., for defendant.

DE VANE, District Judge.

This is a suit by plaintiff to enjoin the enforcement of a zoning ordinance (No. 542), adopted by the City of Tallahassee, Florida on April 27, 1948.

Plaintiff operates a gasoline service station at the dead-end intersection of Lafayette Street with Monroe Street in Tallahassee, across Monroe Street from the main entrance to the State Capitol. The property owned by plaintiff was purchased in 1938 for the purpose of erecting thereon a service station as an outlet for the sale of plaintiff's products. At the time of the purchase of said property there did not exist any restrictions by municipal ordinance or otherwise against the use of said property 'for such purpose. Plaintiff expended considerable money in the construction of the service station thereon, opening the same for business on or about November 1, 1938.

Under the zoning ordinance then in effect said property was located in what was designated as residence district "B", which

permitted the construction and operation of service stations in such districts. Amendments were made, from time to time, to the zoning ordinance, which will be more fully referred to later. The latest amendment required plaintiff to discontinue the operation of its service station on or before May 1, 1949.

This suit was filed prior to May 1, 1949 and on April 30, 1949 a temporary restraining order was issued by this court enjoining the City from enforcing the ordinance against plaintiff until after final hearing in this case.

A review of the history of zoning laws passed by the State Legislature and of zoning ordinances adopted by defendant will aid in the determination of the issues before the court in this case. Chapter 15520, Sp.Laws of Florida, Acts of 1931, specifically authorized the City of Tallahassee to regulate the location and use of buildings and lands within the City, pursuant to a comprehensive zoning plan. Subsequently practically the same grant of authority was given all municipalities in the State through the enactment of Chapter 19539, Laws of Florida, Acts of 1939, Chapter 176, Fla.Stat.1941, F.S.A. The constitutionality of this legislation has been upheld by the Supreme Court of Florida in numerous decisions, some of which are cited below. State ex rel. Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114; State ex rel. Skillman v. City of Miami, 101 Fla. 585, 134 So. 541; City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364; Miami Shores Village v. William N. Brockway Post No. 124, 156 Fla. 673, 24 So.2d 33.

Pursuant to authority granted to it by Chapter 15520, supra, the City of Tallahassee, by ordinance No. 263, adopted April 13, 1936, approved and put into effect a comprehensive zoning plan for the City. The area within which plaintiff's property is located was designated as a residence district "A" and under the terms of said ordinance service stations could not be operated within said area.

Ordinance No. 280, adopted December 22, 1936, changed the designation of the area to residence district "B" and permitted the operation of service stations within said area. It was during the period when this ordinance was in effect that plaintiff purchased the property involved in this suit and constructed its service station thereon.

Ordinance No. 334, adopted January 24, 1939, removed from residence district "B" the area within which plaintiff's property is located and added it to business district "A". This ordinance prohibited the construction of any more service stations within all said business district and there was also included in this ordinance the following provision: "No additional motor vehicle service station or stations shall be constructed or operated within the above described parts of this area of the City of Tallahassee, after the effective date of this ordinance; and further that all locations or cites within said parts or areas of the City now used for motor vehicle service stations shall be discontinued as such on and after January 1, 1949."

Ordinance No. 542, adopted April 27, 1948, again changed the area in which plaintiff's property is located from a business district to a residence district "A". It is this ordinance which plaintiff seeks to enjoin.

Business district "A", established by ordinance No. 334, adopted January 24, 1939, included not only the area in which plaintiff's property is located, but also included the main business district of the City lying adjacent to and immediately north of the area in which plaintiff's property is located. The provision with reference to the discontinuance of the operation of service stations in said business district "A" before January 1, 1949 was also applicable to this area and all service stations in what is now the main business district lying between Pensacola Street on the south and Park Avenue on the north have been forced to discontinue operation. Two other service stations formerly located in the same district as plaintiff was and is now located also ceased operation before the dead-line given them and plaintiff is the only one of the five stations affected by this ordinance No. 334 still in operation.

This resume of the zoning laws and ordinances applicable to the City of Tallahassee clearly shows that the City had been vested with authority to enact such ordinances and had exercised such authority prior to the acquisition by plaintiff of the property involved in this suit and plaintiff acquired the property with full knowledge of the right of the City to modify its zoning ordinances to meet the needs of this rapidly growing City.

The principle grounds upon which the validity of this ordinance is attacked may be summarized as follows:

1. The property of plaintiff is located one block south of the principal business district of the City. The trend in this area is towards business and not residential use and the business district should, therefore, be extended south to include plaintiff's property.

2. The classification of said area as residential is arbitrary and unreasonable and has no relation to the announced purposes of said ordinance.

3. The ordinance is unreasonable, arbitrary and confiscatory because it would greatly depreciate the value of plaintiff's property, its highest and best use being for a service station or other business purpose.

4. The ordinance permits non-conforming uses in other business and residential districts and to deny such right to plaintiff constitutes an arbitrary and unreasonable discrimination.

5. The exemption from the terms of said ordinance of all existing non-conforming uses within said residence district, except service stations, and the creation of an "island" business district "A" inside said residence district "A" in close proximity to plaintiff's property, is discriminatory and denies plaintiff the equal protection of the law, to which it is entitled.

6. The ordinance cannot be sustained on the ground that it will promote the health, safety, morals, convenience and general welfare of the inhabitants of the City and for this reason is an illegal exercise of the authority vested in the City under the laws of the State.

The facts in the case are not in essential dispute—they were in large part stipulated. Considering first grounds 1 and 2, the evidence shows that the property of plaintiff is located one block south of the principal business district, although the evidence does not sustain the contention of plaintiff that the trend in the area in which plaintiff's property is located is towards business and not residential use. Ordinance No. 334, adopted January 24, 1939, changed the area within which plaintiff's property is located from residence district "B" to business district "A" and the area retained such designation until the adoption of ordinance No. 542 on April 27, 1948 when the area was changed from business district "A" to residence district "A". The evidence shows that during this period there was little business development in the area. As a matter of fact, businesses, other than service stations, were never prohibited in the area prior to the adoption of ordinance No. 542, on April 27, 1948, and there had been little business development of any kind in the area, despite rapid growth in other sections of the City. In view of this historical development of the area affected the court need not concern itself with the wisdom of the City in enacting the zoning ordinance questioned. Godson v. Town of Surfside, 150 Fla. 614, 8 So.2d 497; City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364; State ex rel. Skillman v. City of Miami, 101 Fla. 585, 134 So. 541; State ex rel. Henry v. City of Miami, 117 Fla. 594, 158 So. 82.

Passing next to ground 3, the evidence supports plaintiff's contention that the value of its property will be greatly depreciated if plaintiff is prohibited from the use of said property as a service station. The testimony is to the effect that the property, with improvements thereon, is worth approximately $55,000.00 as a service station; that the improvements are unfit for any other use and that the bare land is worth not to exceed $5,000.00 for residential purposes. However, it is well settled that a zoning ordinance is not invalid because it has the effect of depreciat-

148

ing the value of certain property affected by it. State ex rel. Townsend v. Farrey, 133 Fla. 15, 182 So. 448; City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364; Marblehead Land Company v. City of Los Angeles, 9 Cir., 47 F.2d 528; Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann.Cas.1917B, 927.

Considering together grounds 4 and 5, the evidence supports the contention of plaintiff that the ordinance in question permits non-conforming uses in other residential districts and that it exempts from the terms of said ordinance all non-conforming uses within the district where plaintiff's property is located, except plaintiff's service station. The ordinance also permits the continued operation of a service station about five blocks east of plaintiff's property, which was in a residence district "B" when it was constructed but is now in the same residence district "A" in which plaintiff's property is located. The ordinance prohibits the continued operation of service stations only in that part of residence district "A" adjacent to the State Capitol and the other service station lies outside this area. The evidence also shows the creation of a small business district "A" in close proximity to plaintiff's property. These objections, however, are likewise not sufficient to strike down the ordinance. The power of the City to require discontinuance of existing uses is well established law in Florida. State ex rel. Henry v. City of Miami, 117 Fla. 594, 158 So. 82; Knowles v. Central Allapattae Properties, 145 Fla. 123, 198 So. 819. In State ex rel, Skillman v. City of Miami, 101 Fla. 585, 134 So. 541, the Supreme Court of Florida sustained an ordinance zoning a limited area on Biscayne Boulevard, Miami, Florida against the maintenance and operation of funeral homes. In State ex rel. Dallas Inv. Co. v. Peace, 139 Fla. 394, 190 So. 607 the Supreme Court of Florida held valid an ordinance in the City of Miami prohibiting the erection of a gasoline filling station within 350 yards of any church, hospital, school or other public institution or within 750 feet of another filling station. Plaintiff's service

station is within close proximity to the State Capitol, several State office buildings and a public school, which constitutes sufficient ground for the City to require the discontinuance of plaintiff's service station. See also, State ex rel. Henry v. City of Miami, supra; Texas Co. v. City of Tampa, 5 Cir., 100 F.2d 347; Hadacheck v. Sebastian, supra and State ex rel. National Oil Works of Louisiana v. McShane, 159 La. 723, 106 So. 252.

Lastly, when evidence was proffered that the ordinance did not promote the health, safety, morals or general welfare of the inhabitants of the City, the court ruled out all such evidence except that bearing upon the general welfare. Defendant made no contention that the ordinance in any way promoted the health, morals or convenience of the inhabitants of the City, but did insist that both safety and general welfare were involved. The court refused to hear testimony on the issue of safety for the reason that the City was unable to produce any evidence satisfactorily showing that any hazards existing at the intersection of Lafayette and Monroe Streets were not equally present at other service stations located in the City. Evidence on this question, therefore, was confined to general welfare.

The character of the use of much of the property immediately adjacent or contiguous to and abutting the property of plaintiff has not changed essentially, except to the extent hereinafter specified, since the construction of the service station by plaintiff. In fact, it has not changed essentially in many years. Much of the development for several blocks east and south of plaintiff's property has been for years and still is an eyesore in the community. Despite the fact the area was zoned for business for many years, no businesses of any consequence were established in the area. The purpose of the zoning ordinance now under attack is to remove this eyesore. Some progress in this direction is being made in certain parts of the City adjacent to the district in which plaintiff's property is located, but the progress is slow and there remains much to be desired.

As heretofore pointed out, the service station of plaintiff is located at the dead-end intersection of Lafayette and Monroe Streets and just across Monroe Street from the main entrance to the State Capitol. Monroe Street is the principal thoroughfare in the City of Tallahassee. The residence district in which plaintiff's property is located contains several city blocks lying west, south and east of the State Capitol. Six large State office buildings adjacent to the Capitol are also located in the district. Most of the property acquired by the City and State, on which the State office buildings are located, were occupied by residences before acquisition and by far the greatest use made of the property in the district is for residential purposes. While it is true that most of the residences are far below standard and many of them shacks that fact contributes to rather than impedes the development of the property for high-class residential use. Apartment house development for use by State employees working in the Capitol Center office buildings is not only possible but very probable. It is at least an end worth striving to accomplish. It may safely be said that the area at least lends itself to a development of this character more readily than any other that would not constitute a nuisance to the State's property located in the area.

 The Supreme Court of Florida has held that in judging the merits of a controversy of this kind the facts peculiar to the particular case will govern and the court will not substitute its judgment for that of the legislative body of the City. City of Miami Beach v. Ocean & Inland Co., supra [147 Fla. 480, 3 So.2d 366]. In the case just cited the court also said: "We do not comprehend how it can be successfully urged that the maintenance of safety, health or morals are involved but only whether in the circumstances of this particular case the restrictions are so unnecessary to the general welfare of the inhabitants that the curtailment of the rights of the plaintiff are unreasonable and arbitrary."

And the court went on to say further: "We will determine the reasonableness of the regulations as applied to the factual situation meanwhile keeping before us the accepted rules that the court will not substitute its judgment for that of the city council; that the ordinance is presumed valid (State ex rel. Taylor v. City of Jacksonville, supra) and that the legislative intent will be sustained if 'fairly debatable'. Euclid Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016.

Many cases have been before the Supreme Court of Florida involving the validity of zoning ordinances, some of which have been struck down and others sustained. The court has reviewed most of these cases and finds and holds that the legal principles announced by the court in City of Miami Beach v. Ocean & Inland Co., supra, are applicable to this case and upon the authority of that case and the other cases cited the relief sought here will be denied.

An Order will be entered in conformity with this Memorandum Decision dissolving the temporary restraining order and dismissing the suit.