166 So.2d 168 (1964)
R.H. BURRITT, Appellant,
v.
Bob HARRIS, Ray Greene, Lem Merritt, Julian Warren, and Fletcher Morgan, as and Constituting the Board of County Commissioners of Duval County, Florida, and John H. Crosby, as Zoning Director of Duval County, Florida, Appellees.
No. E-310.
District Court of Appeal of Florida. First District.
July 2, 1964.
*170 Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellant.
J. Henry Blount and Thomas D. Oakley, Jacksonville, for appellees.
MASON, Associate Judge.
This is the second appeal of this case. The first was an interlocutory appeal brought by the appellees herein from an interlocutory order of the chancellor refusing to dismiss this suit on appellees' motion. Appellees (defendants below) sought to dismiss the complaint on the ground that an original suit did not lie in equity to review a decision of a county zoning board, but that the same could only be reviewed by certiorari. We affirmed the chancellor under authority of Harris et al. v. Goff et al., Fla. App., 151 So.2d 642, and held that the actions of a county zoning board were legislative in character and not quasi-judicial. Harris et al. v. Burritt, Fla., 151 So.2d 645. Thereupon a final hearing was held upon the complaint and answer of the appellees herein and testimony taken, and decree was entered by the chancellor dismissing the complaint with prejudice.
The sole question to be determined is whether appellees abused their authority in refusing to rezone appellant's land from residential to industrial use. It is the position of appellant that the record upon which the chancellor's order of dismissal with prejudice is based does not reflect such substantial and reasonable relationship between the public health, morals, safety and welfare of the citizens of Duval County and a residential-use zoning as to justify and sustain the refusal of the County Zoning Board (appellees herein) to rezone so as to permit him to use his land for industrial purposes. He assigns as error the chancellor's order of dismissal, the effect of which order is to uphold the action of the Zoning Board.
The record herein discloses that pursuant to statutory authority the appellees constituting the Board of County Commissioners of Duval County adopted a zoning resolution for the unincorporated areas of Duval County including the property now owned by appellant. This resolution was adopted prior to appellant's purchase of the property in 1957, and zoned the property in question as "Residence `A'". Property zoned as "Residence `A'" has its use thereby restricted exclusively to residences, publicly owned and operated recreational facilities, churches and schools, and non-commercial boat piers or slips for docking private watercraft, and accessory buildings. After purchasing the property appellant tried unsuccessfully several times to have the appellees rezone his property from "Residence `A'" use to permit industrial use of it. Each time he was turned down by the appellees. His last application was a request to have the zoning of his property changed from "Residence `A'" to "Industrial `A'". This suit is one to have the Court declare the "Residence `A'" zoning *171 classification void as unreasonable, arbitrary, and confiscatory of appellant's property, and to enjoin appellees from enforcing as against appellant's property any zoning restrictions more stringent than "Industrial `A'".
Property zoned "Industrial `A'" by the zoning regulations may be used for light to medium manufacturing and industry, including sawmills and machine shops, for certain commercial uses, and for retail establishments. Testimony before the chancellor establishes that appellant paid $23,500 for his property zoned "Residence `A'", and that its value so zoned at the time of final hearing was $32,500. If the zoning classification were changed to "Industrial `A'" its value would approximate $65,000.
Appellant's property on its western boundary abuts and is contiguous to the eastern boundary of Imeson Municipal Airport, the commercial airport serving the City of Jacksonville and owned and operated by that city. A portion of the Airport also borders upon the southern boundary of appellant's property, so that his property is bounded on the south and the west by the Airport. To the east and north of appellant's property lies other residentially-zoned property which borders upon the Broward River. Thus appellant's property is bounded on the north and east by other residentially-zoned property, and upon the south and west by the Airport. Appellant's property has no water frontage. The Airport is not under the jurisdiction of county zoning. Therefore, the City as owner does not have to conform to any regulations of the County. The Airport has an east-west runway, the easternmost end of which lies approximately 700 feet south of the south line of appellant's property. There is a north-east south-west runway, the north end of which lies to the west of plaintiff's property. However, the City of Jacksonville has secured aviation easements over the area which lies between said northern terminus of said runway and the Broward River to the north. The easternmost boundary of this easement is within 1000 feet of the northwest corner of appellant's property. The only way of ingress and egress to appellant's property is a county owned and maintained road known as Cedar Bay Road which begins at Main Street Road to the west of appellant's property and runs easterly north of appellant's property, turning south at the northeast corner thereof and dead-ending at a point east of the southeast corner of his said property. Main Street Road is a thoroughfare running generally north and south to the west of and parallel to the Airport, and parallel to the residential property which lies north of said Cedar Bay Road. There are residences scattered along this Cedar Bay Road in an area zoned "Residence `A'". Aircraft using the north-east south-west runway approach and leave this runway over the easement adjacent to and across said Cedar Bay Road. Jet aircraft, including F 102 jets operated by the Air National Guard, use this runway for take-off and landing. At the time of the final hearing the Airport had a combined total of 608 scheduled commercial flights daily in and out of said airport. Six commercial air lines use the Airport and operate 18 daily jet flights from it. There was testimony that numerous complaints had been made to the City of Jacksonville by the residents along Cedar Bay Road concerning the noise made by jets taking off from the Airport from this north-cast south-west runway. The City Commissioner in charge of the Airport testified that these complaints, along with the opinion of the Federal Aviation Agency that the area around the Airport was too crowded, has caused the City to consider building a new airport for the City of Jacksonville.
Appellant produced testimony that his property is of the same type, i.e., rolling sand hills, scrub oaks and pine, as that of adjacent properties lying to the south-east and south of him and which are zoned for industrial use, and which are now being used by various oil companies as oil terminals. Two real estate appraisers testified that appellant's property is unsuitable for *172 residential purposes due to its proximity to the airport and that the highest and best use to which it could be put is industrial use. These witnesses testified that the Veterans Administration and Federal Housing Administration would not approve mortgage loans for residences upon this property because of its airport proximity. St. Regis Paper Company operates a paper mill on the other side of Broward River from appellant's property and the real estate experts testified that the odors from the mill were detrimental to residential use of appellant's property.
The Zoning Director of Duval County testified that adjacent properties zoned for industrial use by appellees were so zoned because they had river frontage; that "Industrial `A'" zoning requested by appellant, if granted, would permit light (and under certain conditions, heavy) industries and manufacturing which could have smokestacks that could produce smoke. This, in the judgment of appellees, would be detrimental to aircraft taking off and landing upon the north-east south-west runway used mostly by jet aircraft, both because of the possible height of the stacks and smoke emanating therefrom. The City Commissioner of Jacksonville in charge of the Airport also testified that industrial smoke emanating from existing industry has created a hazard to aircraft using the Airport. The Zoning Director also testified that a change in zoning of appellant's property to industrial use would be detrimental to the owners of residences in the residential area adjacent to appellant's property. Thus, the refusal to rezone appellant's property was based upon two factors, viz.: safety and anticipated damage and injury to adjacent residents. The Zoning Director also stated that the Zoning Board considered as premature a change of this property to industrial use at the time of its last refusal, in view of the uncertainty of the future use of Imeson Airport.
Two of the conditions which appellant claims makes his property undesirable for residential purposes, viz.: proximity to the Airport and proximity to the St. Regis Paper Mill, existed at the time appellant purchased his property. Also, at the time of his purchase, the property was zoned for residential use only.
There are certain principles pertinent to the disposition of this appeal. First, the right of an owner to devote his land to any legitimate use is property within the terms of both the Federal and State Constitutions, and zoning authorities may not, under the guise of the police power, impose unnecessary or unreasonable restrictions upon such use. Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406; State of Washington ex rel. Seattle Title Trust Company v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210; Friedland v. Hollywood, Fla.App., 130 So.2d 306. Zoning boards are in the same category as all other administrative boards with reference to validity of regulations or ordinances promulgated by them, and although their ordinances and regulations will be given serious consideration and their judgments great weight, where it is conclusively shown that they deprive a person of his property without due process or otherwise infringe on state or federal constitutional guarantees unreasonably, such ordinances and regulations cannot be said to be reasonably debatable, and will be declared invalid. Zoning regulations which have no substantial relation to the public health, safety, morals, and general welfare, are arbitrary, unreasonable, and unconstitutional. City of Miami Beach v. Lachman, Fla., 71 So.2d 148; Tollius v. City of Miami, Fla., 96 So.2d 122. When property, restricted to a defined use by a zoning regulation, changes its character to the extent that it is no longer adaptable to the use it is zoned for, it then becomes the duty of the zoning authorities to relax its restrictions if a failure to do so would result in confiscation of the property. Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642. When a particular attempted exercise of the police power by a state, or under its authority, passes the bounds of reason and assumes *173 the character of a merely arbitrary fiat, it will be stricken down and declared void. Purity Extract & Tonic Company v. Lynch, 226 U.S. 192, 33 S.Ct. 44, 57 L.Ed. 184, "Spot zoning", that is to say, variances from the general pattern of the zoning regulation, which permits a less restrictive use of some properties in the area zoned than other properties therein, and which violate the integrity of the district and destroy the character of the neighborhood, is universally condemned by the courts. City of Miami Beach v. Midcentury Corp., Fla., 75 So.2d 606; Parking Facilities v. City of Miami Beach, Fla., 88 So.2d 141.
The burden is upon the appellant to show reversible error, for the decree of the chancellor comes before this Court clothed with the presumption of correctness. City of Miami v. Hollis, Fla., 77 So.2d 834. One who assails the validity of a zoning regulation must carry the burden of proving its invalidity, and this burden is an extraordinary one. Blank et al. v. Town of Lake Clarke Shores, Florida, decided by the District Court of Florida, Second District, 161 So.2d 683, opinion filed February 28, 1964; City of Miami Beach v. Silver, Fla., 67 So.2d 646. The Zoning board acts in a legislative capacity and the Court in reviewing its action may not substitute its judgment for that of the legislative body. City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364. Legislative intent will be sustained if the validity of the regulation in its application to the property in question is "fairly debatable". City of Miami Beach v. Wiesen, Fla., 86 So.2d 442. The regulation is said to be "fairly debatable" when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity. City of Miami Beach v. Lachman, Fla., 71 So.2d 148. The fact that property zoned residential is more valuable for commercial purposes does not of itself invalidate a zoning regulation or ordinance. Polk Enterprises, Inc. v. City of Lakeland, Fla. App. 1962, 143 So.2d 917. The fact that a property owner purchased the property with knowledge of the restriction placed upon its use by a zoning regulation is a factor to be considered by the zoning board in considering his application for a variance or change on the claim of hardship, even though he still could attack its validity on the ground that the regulation was void from its inception on constitutional grounds. Mayer v. Dade County, Fla., 82 So.2d 513.
We have considered the facts of this case as reflected in the record before the chancellor in the light of the several principles enunciated, supra, and arrive at the conclusion that the chancellor did not err in dismissing this suit with prejudice. We, therefore, affirm.
Inherent in the order of dismissal below is the finding by the trial court that the appellees did not abuse their authority in refusing to rezone appellant's land to permit industrial use of it. As to appellant's charge that a continuation of residential-use zoning amounts to confiscation of his property, this is refuted by the fact that the value of his property actually increased from its purchase price of $23,500 to $32,500, between the date of purchase in June of 1957 to the date of the final hearing herein on June 3, 1963. We fail to see that an increase of over 38% in value during a six-year period amounts to confiscation. Furthermore, appellant has failed to carry the burden of showing that the character of his property has so changed as to make a refusal by the Zoning Board to alter its zoning classification, confiscation of his property.
Nor do we believe that the appellant has carried the burden of establishing that the action of the appellees, acting as the Zoning Board, in continuing the residential-use character of his property, was, under the circumstances as reflected in the testimony and evidence before the chancellor, either arbitrary, unreasonable or discriminatory. We conclude that the *174 chancellor was correct in concluding that their action was not permeated with either of said vices. It is true that the evidence before him was conflicting, but we hold that he was justified in determining, as he evidently did in dismissing the suit, that there was such a substantial and reasonable relationship between the public safety and welfare of the citizens and residents of the County and a residential-use zoning as to justify and sustain appellees' refusal to rezone appellant's property to permit its industrial use. The evidence is ample to support a finding that to permit industrial use of this property would increase an already existing hazardous condition surrounding Imeson Airport, and thus make the use of the Airport more unsafe than it now is, without the addition of more buildings and structures which could be located on appellant's property if it were permitted to be put to industrial use. The fact that appellant's property lies contiguous to the terminus of the runway of the Airport which is most used for landings and take-offs of aircraft, particularly large jets, would alone justify appellees' refusal to permit its industrial use. And certainly the appellees should, as they evidently did, consider the welfare of the residents of dwellings located along Cedar Bay Road to the north and east of appellant's property. These people had the right to be secure in the fact that the area in which they established their dwellings, and which includes appellant's land, was and would remain residential in character, and that they would not have to be subjected to the various nuisances to abutting residents usually associated with the industrial use of property. At any rate, appellant purchased this land knowing at the time that it could be put to residential use only and thus by his own conduct created the exact hardship of which he now complains.
Appellant charges that appellees have been guilty of "spot zoning" in the general area of his property, in violation of the provision of the statute under which they act as a Zoning Board, which requires that zoning regulations "shall be made in accordance with a comprehensive plan". He cites in support of this charge seven variances granted by the Zoning Board since 1950. However, an examination of the map of the area (plaintiff's Exhibit 4), refutes this charge, for all of the variances involve properties lying great distances from appellant's land, with one exception, and that is the property now zoned "Industrial `B'", lying to the south and east of his land, with only a small portion of it touching his southeast corner. The Zoning Director distinguished the character of this latter area from that of appellant's land, stating that all of it was waterfront property, and that appellant's was not. The aerial map in evidence of the general area surrounding appellant's property, of the Airport, of the industrial areas to the west, south and east of the Airport, and of the residential areas lying to the north and east of appellant's land, depicts the fact that there are no residences in the areas rezoned from residential to industrial use. The same map depicts numerous residences spotted throughout the areas still zoned "Residence `A'", and lying to the north and cast of appellant's property. As we have seen, appellant's property is completely surrounded by either the Airport or other residence property. Therefore, the granting of the variances complained of in no wise affects the character of the neighborhood in which his property lies. It is evident that the variances granted by appellees, and the granting of which appellant says is discriminatory in relation to the Zoning Board's refusal to grant his request, in no wise violate the integrity of the area in which appellant's land lies, nor destroy the character of that neighborhood as a residential district.
We cannot say that the action of the Zoning Board has been proven herein to have been either arbitrary or unreasonable. Nor has it been shown to have been discriminatory, or confiscatory as it affects appellant's property. Certainly, this record reflects that in its application to *175 appellant's property the regulation of the Zoning Board which zoned such property for residential use only is "fairly debatable", and being so, the legislative intent is sustained.
The order of the chancellor below dismissing appellant's suit with prejudice is therefore affirmed.
Affirmed.
CARROLL, DONALD K., Acting C.J., concurs.
RAWLS, J., dissents.
RAWLS, Justice (dissenting).
I have no quarrel with the law cited by my learned colleagues in the majority opinion; however, I cannot escape the conclusion that they have wandered onto the "road of error" in applying same to the undisputed facts appearing in this record.
An examination of elemental, yet no less fundamental, principles of constitutional law is in order. The right to devote one's real estate to any legitimate use is properly within the protection of the Constitution of the United States. Legislators, may not under the guise of the police power, impose restrictions that are unnecessary or unreasonable upon the use of private property or upon the pursuit of useful activities. State ex rel. Henry v. City of Miami, 117 Fla. 594, 158 So. 82 (1934). When a particular attempted exercise of the police power by a state, or under its authority passes the bounds of reason and assumes the character of a merely arbitrary fiat, it will be stricken down and declared void. Purity Extract & Tonic Co. v. Lynch, 226 U.S. 192, 33 S.Ct. 44, 57 L.Ed. 184. "It is well settled law that when a Zoning Ordinance in its application has the effect of completely depriving an owner of the beneficial use of his property, the ordinance should be altered or amended so as to prevent a confiscation of property without compensation. See State ex rel. Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114; State ex rel. Helseth v. Du Bose, 99 Fla. 812, 128 So. 4." Ex parte Wise, 141 Fla. 222, 192 So. 872, 875 (1940).
Plaintiff's 65 acre unimproved tract of land was zoned Residence "A" at the time he purchased same in the year 1957 and this classification continued until the institution of this suit. Residence "A" is the most restricted zone in the Duval County Zoning Regulations, which contains five residence zones. The uncontradicted testimony, including that of the zoning body, is to the effect that the property is unsuitable for residences. Therefore, at the outset this record conclusively discloses that plaintiff has been deprived of the use of his property through the arbitrary fiat of the legislative body and such a confiscation of an individual's property under the guise of the police power should not be allowed to stand.
Plaintiff seeks in this action an injunction prohibiting defendant from classifying his property in a zone more restrictive than Industrial "A", which is the most restrictive of the two industrial zones. As to the differences in these industrial zones, Mr. John H. Crosby, County Engineer Zoning Director, testified that "A" included light to medium industries and in some instances heavy industry which would not emit odor, noise and other detriments to the neighborhood though they could produce smoke and have smokestacks. He stated that Industrial "B" was a catch-all zoning covering anything obnoxious, short of constituting a public nuisance. The Regulations further indicate that airports may be built in any zone between Agricultural "A" and Industrial "B", though Imeson is owned by the City and is not subject to zoning regulations. Bearing these facts in mind, a look at the attached drawing indicates that plaintiff's 65 acre tract is a very small segment of land compared to the size of the whole "peninsula" like area on which it is located. A large portion of the "peninsula" is occupied by Imeson Airport. Almost all of
*176 *177 the remainder of the peninsula is zoned Industrial "B". One small plot about the size of plaintiff's land is zoned Industrial "A". The only indicated part of the peninsula which is zoned residential is plaintiff's property and a small fringe of land north and east of plaintiff's property. The thirteen notations "Pet." followed by a numeral date indicate the areas rezoned upon petition and the date thereof.
The uncontradicted evidence is that plaintiff purchased his property in June 1957. The property owners, who own a majority of the peninsula (other than that occupied by the City or the U.S. Navy), in that year petitioned for rezoning of their property, and in that year, that portion of the peninsula was for the first time zoned Industrial "B". Since that time three oil companies have built installations on the peninsula and American Oil was to begin operations only a few days after the hearing in this cause. A fourth oil company, Frontier, has just completed the purchase of over 100 acres of the remaining industrial property, a corner of which touches plaintiff's lands, upon which it plans to build an oil refinery. Since plaintiff's purchase, St. Regis Paper Company has doubled the size of its plant and the prevailing easterly winds carry the obnoxious odors emitted by it[1] to plaintiff's property. The City, in order to accommodate the increasing jet traffic, has recently lengthened its northeast runway for which it purchased 25 acres of the property zoned as Residence "A". This purchase decreased the number of residences by approximately one-half. It gobbled up 16 houses, 7 small rental units, and one church, leaving 16 to 20 waterfront homes and 4 not on the water. The appraiser who worked for the City in the purchasing of this property testified that the price of the land so purchased was low because of its proximity to the airport. Mr. Ritter, Airport Zoning Commissioner and City Commissioner in charge of highways and airports, testified that he is receiving an increasing number of complaints from the residents about the noise since jets have been using the airport. The City is presently faced with the prospect of building a new airport or modernizing Imeson. There is no evidence that the modernizing process will require additional lands. There is evidence that if a new airport is built, the City will sell Imeson for its best use, and the city appraiser has determined its best use to be industrial.
Plaintiff testified that he had been unable to sell his property because of the zoning. Two expert appraisers testified that the property is unsuitable for agriculture, it being sandy land partially covered by scrub oaks and cut over pines, and it is likewise unsuitable for residences because of the following factors:
1. The obnoxious odor from the St. Regis paper plant.
2. The noise from the airport [City records show 608 daily scheduled commercial flights constituting 44% of the air traffic at the airport.]
3. No schools or shopping center in the area.
4. Neither FHA nor VA, which finances 90 to 95% of all residential construction, will make loans in areas located within 1/2 mile of a runway. This limitation takes in all of plaintiff's property.
5. Financial institutions such as Federal Savings and Loan Associations don't generally make loans in areas as controversial as this.
6. The tract is not large enough to install water and sewer systems which are economically feasible.
These appraisers further testified that the highest and best use for plaintiff's property would be general industries, manufacturing and warehousing.
*178 The most favorable evidence adduced by the defendant was that plaintiff's land was suitable for warehouses which are permitted in zone Business "B" down through Industrial "B". The defendants introduced no evidence of a comprehensive zoning plan and no evidence that plaintiff's property was suitable for Residence "A". When asked if the highest and best use for plaintiff's property is Industrial "A", Crosby replied that he had twice recommended against re-zoning plaintiff's property "not because of the proximity of the airport * * * but because of the fact that this is an encroachment on the good people that have spent a great deal of time and money to develop residential property which would be devalued by the encroachment of the zoning * * * these people have a substantial investment, they know it's [the airport] there and we have to give every consideration to their maintaining their investment so it is for that reason that I say at this time the highest and best use is not for industrial purposes."
There was evidence that Cedar Bay Avenue is the only road to plaintiff's property and at present it is a quiet dead-end, narrow, paved street used by only the local homeowners. The defendant's map shows that this street dead-ends at property which it rezoned on June 12, 1957 as Industrial "B", and that this is the only street serving the north end of that property should it be developed for industrial purposes.
The majority opinion places emphasis upon testimony that plaintiff's property has increased in dollar value from the date of purchase until the present date, and, therefore, it cannot find any confiscation by the zoning authority of plaintiff's property. Somehow, the majority has substituted a mythical increase or decrease in dollar value as the test for confiscation. I do not understand such to be the correct test. It is the right of an individual to own and use property in this nation of free people that is guaranteed by our Federal and State Constitutions, and the arbitrary action of a governmental body in depriving an individual of the use of his property will be stricken down by the courts. The applicable rule is clearly stated by Judge Kanner in Waring v. Peterson, 137 So.2d 268 (Fla.App.2d 1962), viz.:
"* * * [F]inancial advantage or disadvantage to owners as a result of it or its enforcement is not the test of its validity. Because of the common effect on properties coming under the general plan of the zoning ordinance, reduction in values shared by most or all the owners in a locality is not enough, of itself, to render the ordinance confiscatory. On the contrary, if the limitations upon the use of the property are constitutional and applied reasonably and fairly to all, they are valid and the individual hardship and loss must be endured to the end that the greater advantage to the community as a whole is made possible. See McQuillin, Municipal Corporations, 3rd Ed., Vol. 8, Section 25.44, p. 98; Yokley Zoning Law and Practice, Vol. 1, Section 35, p. 58."
Thus, the test is not whether a person can sell his property for a given number of dollars by reason of a particular zoning classification being assigned to a parcel of property. The test which must be applied is with respect to the reasonableness of the limitation placed upon the use of said parcel by the legislative body. In the instant case the Duval County Commissioners have determined that the subject property may only be used for the highest residential classification, that being Residence "A". Every factual circumstance existing in this record including the admission of counsel at the argument of this cause, proves that the subject property was not suitable in the year 1957 for use under such classification, has not since said time been suitable for such use, and is not suitable at this time for such use. Clearly, such a classification bears no substantial relation to the public health, safety, morals or general welfare, and presents no debatable question.
*179 The majority opinion places emphasis upon the following factual observation: "The evidence is ample to support a finding that to permit industrial use of this property would increase an already existing hazardous condition surrounding Imeson Airport, and thus make the use of the Airport more unsafe than it now is, without the addition of more buildings and structures which could be located on appellant's property if it were permitted to be put to industrial use." I have been unable to discover such ample evidence in this record. The sole evidence that I can find concerning a hazard factor is the following testimony by Mr. Ritter, an Airport Zoning Commissioner:
"Q. Are you at the present concerned at all with the smoke or smog condition caused by industry?
"A. The Federal Aviation industry last week asked the City of Jacksonville or some of the city officials who flew through town were somewhat concerned about the stacks and smoke being produced by St. Regis and we have sent photographs of that situation to the F.A.A. as of last week.
* * * * * *
"Q. In this Airport Zoning Commission, have you all developed the need for controlled zoning around airports as far as hazards are concerned?
"A. We have discussed it at length for many times and I believe they don't control usage of lands but only height."
It appears that the majority is utilizing the foregoing testimony upon which to support a debatable issue as to an effect upon the "public health and safety". I do not think such weight can be assigned to these isolated statements, especially in view of the repeated efforts of plaintiff to procure a rezoning classification of his property since 1957 and considering the numerous "variances" or "spot zonings" granted by the zoning authority in the year 1957.
Furthermore, we are not here confronted with the question of whether there could possibly be established in zone Industrial "A" an industry which would be a hazard to the airport. Appellee Duval County zoning authority is not charged with nor does it have jurisdiction of matters which might constitute airport hazards. Jurisdiction of such matters is vested in the Jacksonville Airport Zoning Commission. (See Chapter 333, Florida Statutes, F.S.A., which authorizes political subdivisions owning an airport to establish airport zoning regulations for the prevention of airport hazards and Waring v. Peterson, supra.) The property in question is subject to the regulations of both the Duval Board of County Commissioners (appellee) and the Airport Zoning Commission. For this reason the chancellor at the hearing correctly sustained objections to other questions delving into airport hazards. In my opinion, the instant zoning restriction does not bear a substantial relationship to public health, morals, safety or public welfare.
The fact that this owner purchased the land knowing the zoning classification, has no effect upon the questions presented, and the principle of law cited in the majority opinion, viz.:
"The fact that a property owner purchased the property with knowledge of the restriction placed upon its use by a zoning regulation is a factor to be considered by the zoning board in considering his application for a variance or change on the claim of hardship, even though he still could attack its validity on the ground that the regulation was void from its inception on constitutional grounds. Mayer v. Dade County, Fla., 82 So.2d 513",
is not applicable in this case. Justice Drew, speaking for our Supreme Court in Oka v. Cole, 145 So.2d 233, 236 (Fla. 1962), clearly and concisely expressed the law applicable to a property owner who seeks a variance as distinguished from the situation existing when a property owner, as in the *180 instant case, directly attacks the constitutionality of a zoning classification assigned to a particular parcel of property, that statement being:
"Nor can we find support in reason or authority for the perpetuation of an absolute rule applicable to hardship which is `unactionable because self-imposed.' The doctrine was applied in Josephson v. Autrey, Fla. 1957, 96 So.2d 784, to one attempting to obtain a variance from a zoning board whose authority under the enabling ordinance did not encompass the power to amend or determine the validity of a zoning classification, but merely to waive in a particular instance a restriction which was otherwise recognized as valid and effective. The rationale of the decision was that the character of hardship upon which the board's exercise of variance power was conditioned, i.e. `unique or unnecessary,' precluded exercise of such power on the basis of `self-created' hardship. The opinion clearly differentiated `our cases where we have held that a property owner will not be precluded from attacking the basic validity of a zoning ordinance merely because the ordinance was in force when he acquired the property,' at page 789." [Emphasis supplied.]
I am convinced that the decision of the majority is in direct conflict with our Supreme Court's decision in Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642 (1941). The factual situations existing in the Forde decision and the instant cause are strikingly analogous. Similarities existing in both cases are: 1. The plaintiff-owners purchased their property in recent years after it was zoned residential. 2. The uncontradicted testimony was to the effect that the property was unsuitable for residences in that financing same would be very difficult. 3. The homeowners across the street complained that they had built subject to the restriction and that a change would cause too much traffic on their street. 4. The character of plaintiff's property has changed. In Forde, erosion had decreased the depth of the property since the adoption of the ordinance in 1930, and the cost of a seawall and fill would be prohibitively expensive for a homeowner. Although the facts in the instant case failed to show the date of original zoning, the changes occurring at the time of and since plaintiff's purchase are more formidable than those in the Forde case. These include the rezoning and recent development of large nearby areas as Industrial "B", the doubling of the size of St. Regis paper mill, the extension of the airport runway to accommodate increased jet traffic, the swallowing-up by the airport of 25 acres of the remaining residential zone, and the fact that financing housing has been shown to be almost impossible due to the above factors. The property in the Forde case was bordered on two sides by hotels and apartment houses and by the airport in the instant case. 6. The evidence showed the feasible use for the property in the Forde case was for hotels and apartment houses and in the instant case for manufacturing, industrial and warehouses. The differences in the two cases are: 1. In the instant case there was some evidence tending to indicate spot zoning and an absence of such in the Forde case. 2. The Forde case contained evidence that the annual property taxes amounted to about $500.00 per lot, but that opinion did not reveal what proportion of the value of the lots this would be. The instant case contained no evidence as to the amount of the annual taxes. 3. In Forde there was some evidence that the City's growth should cause a future trend toward greater demand for beach residence property. No trend was shown in the instant case except that of recent years toward industrial development of the area and the demand by the Federal Aviation Authority for future airport improvements. Thus, the Forde case held that the property was unfit for the purpose to which it was restricted; the restriction was unreasonable; and property owners should not be required to wait until their property becomes suitable for the restricted purpose since taxes *181 could consume a large part of the value of the property while the owners wait for the demand for private beach property to increase. The principle relied upon there is:
"* * * Restrictions on private property must be kept within the limits of necessity for the public welfare or it will be recognized as an unlawful taking. Arverne Bay Constr. Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, 117 A.L.R. 1110. And when property, restricted to a defined use by a zoning ordinance, changes its physical character from natural causes to the extent that it is no longer adaptable to the use it is zoned for, then it becomes the duty of the zoning board to relax its restrictions to prevent confiscation just as much so as in the case where the regulation was invalid in the first instance. See State ex rel. Taylor v. Jacksonville, supra; Ex parte Wise, 141 Fla. 222, 192 So. 872." [Emphasis supplied.]
And in State ex rel. Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114, 116 (1931), the rule is stated as follows:
"It has been frequently held that, if the application of a zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property, it would become the duty of the zoning board to relax its restrictions so as to prevent confiscation of a complainant's lands without compensation, otherwise the ordinance would be held bad. State ex rel. Helseth v. Du Bose et al., 99 Fla. 812, 128 So. 4; Sundlun v. Zoning Board of Review of City of Pawtucket, 50 R.I. 108, 145 A. 451." [Emphasis supplied.]
Since the evidence in the instant cause conclusively shows that the property is unfit for residential purposes (the defendant having offered no contradictory evidence), in my opinion, the duty is upon the Duval County zoning board to rezone plaintiff's property.
For the above reasons, I would grant that portion of plaintiff's prayer which sought to have the courts declare the present zoning restriction invalid.
The second portion of plaintiff's prayer seeks an injunction restraining the County Commissioners from zoning plaintiff's property in a more restricted class than Industrial "A". The evidence going toward this point is stated in detail in this and the majority opinion and need not be reiterated here. It includes that evidence relating to the best use for plaintiff's property, the characteristics of land making it unsuitable for agriculture, the distance of the land from well traveled roads, the character of Cedar Bay Avenue which serves the property, the nearness of residences, the nearness and the recent development of Industrial "B" property, the obnoxious smell of the paper, mill, the noise of the jets, the lack of a water front such as existed in the cases of other tracts of nearby land rezoned Industrial "B", the fact that warehousing is permissible in more restricted zones than Industrial "A", the fact that Cedar Bay Avenue is available for use by property already zoned industrial, and that some of the property already zoned industrial is situated further inland than plaintiff's property.
The plaintiff sustained the burden placed upon him and proved that his property was unsuitable for classifications more restrictive than Industrial "A". The burden then fell upon defendants to show that it is at least a "debatable question" as to whether plaintiff's property could be used for the general purposes set forth in a more restricted class. This the appellee wholly failed to do. It did not offer contradictory evidence. The only evidence submitted by the Board to show that the question was "fairly debatable" was proof that the property was suitable for warehousing and that warehouses are permitted in more restricted zones. A perusal of the Zoning Regulations show that warehouses of specified types are permissible in the business zones. *182 However, the Board of County Commissioners not only failed to introduce any evidence showing that plaintiff's property was suitable for those specified types of warehouses, but being bound by its own zone classifications it had the burden of presenting a debatable issue as to the reasonableness of any higher classification than Industrial "A" for assignment to plaintiff's property. This it failed to do.
This case is not controlled by that class of cases which have held that rezoning property is not a function of the court but is a function of the appropriate zoning authorities, [Schoenith v. City of South Miami, 121 So.2d 810 (Fla.App.3d, 1960); City of Tampa v. Consolidated Box Co., 110 So.2d 446 (Fla.App.2d, 1959); City of Miami Beach v. Wiesen, 86 So.2d 442 (Fla. 1956)] for here the plaintiff does not ask the courts to rezone his property but he is seeking in one suit to have the present zoning restriction declared invalid and to have a determination of that point at which any future zoning restriction would likewise be invalid. It should be remembered that this is the fourth time plaintiff has petitioned for rezoning and that in the past the Duval County zoning authority has given full consideration to the decreasing number of existing home owners without any consideration for plaintiff's constitutional rights. Plaintiff should not be required to continually seek the assistance of the courts. His right may and should be settled in one action. Although the courts may not direct zoning authorities to rezone plaintiff's property in a specified classification, they are authorized to direct the authority to rezone the property in some classification less restrictive than the zone which has been shown to be void. In this instance I would direct the authority to rezone appellant's property to a classification not more restrictive than Industrial "A".
This record presents a classic example of the reason and necessity for judicial review of legislative enactments restricting the use of property.
Appellee says in effect, "We realize that this property is not fit for use by its owner within the zoning classification that we have assigned under authority of law and that such has been the case for several years. However, we contemplate new changes in that area[2] and when that comes to pass we plan to take another look at this entire area and do something at such time. In the meantime the individual owner cannot have the beneficial use of his property because we have assigned to it the highest residential classification available even though we know the property is not fit for such use."
There are some forces in this nation which would abolish "property rights". Property has no "right"; however, so long as life is given to the fundamental provisions of our constitutions, individuals living in this country possess inalienable rights as to the use of their property.
The judiciary of this state has traditionally protected an individual's rights from the arbitrary edicts of the other arms of government, and once it ceases to fulfill this role, we then may contemplate the full impact of the heel of autocratic bureaucracy. An affirmance of this action by the county zoning authority constitutes, in my opinion, a deprivation of appellant's property without due process of law.
I dissent.
NOTES
[1] Judicial notice can be taken of the fact that property within close proximity to a paper mill is not suitable for a residential area.
[2] The Board emphasized that Imeson Airport might be closed in the future after a new airport has been built, and at such time the land it occupies would be available for zoning. Since argument of this case it is noted that the freeholders of the City of Jacksonville have defeated a bonding proposal for financing the construction of a new airport.