CITY OF CORAL GABLES v. CITY OF MIAMI, A. E. FULLER,
Individually and as Director of Finance, and A. D. F.
BLOODWORTH, Individually and as City Manager.

190 So. 427
Division A
Opinion Filed June 16, 1939
Rehearing Denied July 24, 1939

882

*Morton B. Adams,* for Appellant;

*J. W. Watson, Jr.,* for Appellees.

THOMAS, J.—This controversy between the cities of Coral Gables and Miami, hereinafter referred to as appellant and appellee, respectively, arose over a franchise granted by the latter to the assignor of the former permitting the operation of a street railway system. The facts to which we are asked to apply the law are gleaned from the bill of complaint, no testimony or evidence having been introduced at the time application was made for a temporary injunction to prohibit the collection by appellee of a tax of five percent of the gross receipts in Miami from buses operated by appellant on the streets of both cities and between the two.

The franchise was originally granted to Coral Gables Rapid Transit Corporation on the 14th day of July, 1925, and subsequently ratified by the electors of the city of Miami. In the ordinance providing for it the grantee was privileged to construct and maintain a "single track railway of a standard gauge over and along certain streets" and under certain conditions and on its part agreed, among other things, to "promptly pay all taxes and assessments, general and special, that may from time to time be lawfully levied and assessed by the City of Miami."

No objection is raised to the substitution of appellant for

the original grantee by ordinance adopted February 28, 1927.

The electric railway system was conducted until November 5, 1935, when a hurricane visited its wrath on the two cities and laid waste the overhead equipment and power plant indispensable to the operation of the appellant's cars.

Meanwhile, a survey had been made by appellant to determine the best method of solving the transportation problems of the fast growing City of Miami and an expert employed for that purpose had recommended the discontinuance of street railways and the installation of buses in lieu thereof.

That no prolonged interruption of service would result from the ravages of the storm, it having appeared that rehabilitation of the plant, wires and accessories would require sixty days, appellant inaugurated an emergency service using buses. In response to a resolution adopted by appellant requesting sanction of the appellee to substitute buses for street cars and remove its rails, ties and other equipment from the streets the latter resolved that the request of the former to "temporarily" run buses instead of cars because of the existing "emergency" be referred to the city manager, city attorney and traffic consultant with authority to act. The following day the city manager of appellee advised the city manager of appellant that there was no objection to supplanting cars with buses during the emergency and continuance of that means of carrying passengers until appellee notified appellant that another method should be adopted.

It was stated at the time that it was not thought advisable to change the franchise but that delay by appellant in repairing its system pending a decision by appellee with reference to a city-wide plan would not affect any rights under the franchise.

In May, 1936, appellant and appellee agreed to the removal of the equipment in some streets, to facilitate improvement by the United States Government, without prejudicing the rights given under the franchise.

November 6, 1936, appellee ordained that a tax of 5% of the gross receipts derived from the transportation of passengers be levied for the privilege of using the public highways of the city. Appellant contends that in all the circumstances the levy of this tax should be enjoined as a violation of rights guaranteed to it under the franchise. The chancellor denied the application for a temporary restraining order.

At the outset it is well to observe that no discussion of the right of appellee to levy the tax, absent the franchise, is necessary for appellant concedes that appellee has the power under its charter, Chapter 10847, Sp. Acts 1925.

From our analysis of the transcript and briefs, we think we must first decide whether authority was given to materially change the grant by using buses instead of electric street cars.

There seems to us a total failure to establish by the allegations of the bill that there was any formal action on behalf of appellee to amend the ordinance in which the rights and duties of the respective parties were defined whereby one undertook to furnish transportation by certain means, namely, electric street cars. There is a vast difference between this method and the one employed to meet the emergency, so far as the appellee, grantor, is concerned. By the one, agreed to in the beginning, the cost of maintenance of track was borne by the grantee; by the other the cost of upkeep of the roadway fell upon the grantor. It is true that the streets are available for use by the public but we have recognized the right of cities to discriminate against those who use them in transporting passengers for hire.

In State *ex rel.* Pennington v. Quigg, 94 Fla. 1056, 114 South. Rep. 859, this Court quoted and approved the following statement of the law comparing the rights of the ordinary citizen in the public highway and the person using it for gain as it was expressed in *Ex Parte* Dickey, 76 W. Va.. 576, 85 S. E. Rep. 781, L. R. A. 1915F, 840.

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for a private gain, in the runnning of a stagecoach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities.'" 114 South. Rep. text 863.

The user of the streets in the laying of tracks, the installation of wires and the operation of an electric railway system was granted in formal fashion by the passage of an ordinance and was ratified by a vote of the people. The procedure necessitated by the visitation of a hurricane was, to say the least, informal and prompted obviously by a desire of appellee to cooperate with a sister city in meeting an emergency with which neither could be charged.

"A municipal ordinance cannot be repealed by a mere resolution. To accomplish that result a new ordinance must be passed." 19 R. C. L., p. 901.

Any revision of the ordinance comprising the franchise to be binding upon appellant could have been effected only by

an act equal in dignity to the first one, namely, by ordinance. Chicago & N. P. R. Co. v. City of Chicago, 174 Ill. 439, 51 N. E. Rep. 596.

A study of the whole case leaves a definite impression that the new arrangement was in all details temporary and was never intended to be a complete and permanent substitution of one means of transportation for another. This is apparent from the action of the Railroad Commission, cited in appellant's brief, and from the resolution of appellee and correspondence to which we have referred. It will be noted that although following the destruction by windstorm appellant resolved that appellee be requested to permit abandonment of street cars and removal of tracks the reply of appellee was in no sense a grant of the request. On the contrary it was indicated that there was no objection to substitution during the emergency.

It is said that there is no evidence in the record of a misuse, nonuse or abandonment of the rights secured to appellant under the franchise and that at most there has been only a temporary substitution of vehicles. We think such a construction rather strained. The emergency, hence temporary arrangement, occurred in November, 1935, and the bill in this case praying for an injunction against taxing appellant's buses was filed in July, 1937. The length of intervening period together with the other circumstances influences us to conclude that the emergency had passed, the substitution had lost its temporary character, and the original mode of transportation had been abandoned by one party without express authority from the other.

The appellant may not under the facts in this case claim that its buses are exempt from taxation. The city had the right to tax vehicles used in the carriage of passengers for hire and no exception would apply to appellant because of

the status it once occupied under an ordinance permitting operation of electric cars.

The order is affirmed.

TERRELL, C. J., and BUFORD, J., concur.

BROWN, J., concurs in opinion and judgment.

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.