**R. W. GODSON v. TOWN OF SURFSIDE, Florida, a Municipal Corporation organized and existing under the laws of the State of Florida; and Samuel Tishman and his wife, Rose Tishman.**

8 So. (2nd) 497                                          Division B
May 26, 1942                          Rehearing Denied June 26, 1942

J. Harvey Robillard and L. A. Schroeder, Jr., for appellant.

McKay, Dixon & DeJarnette, for appellee.

THOMAS, J.:

Oddly enough, this litigation is principally traceable to the fact that one boundary of a city lot was fluctuant. The north, south and west boundaries of the property were fixed, but the east line was the Atlantic Ocean, the shore of which is subject to erosion by tide and wave.

The latter part of the year nineteen forty the appellant, then a prospective purchaser of the property, was furnished with a plat showing a survey recently made and indicating that the length of the lot was approximately two hundred and eighty-five feet. A few months later, having bought the lot, he appeared before the town council and presented to them the plat we have described and a sketch of the building which he proposed to construct on the property. Eventually, 15 July 1941, a permit was issued by the city authorities for the erection of a building of about two hundred and thirty-nine feet in depth "as per application . . . filed in this office" and the instrument contained the "express condition" that all facts stated in the application are true and that the construction . . . [will be] in accordance and compliance . . . with all Ordinances of the Town of Surfside, and rules and regulations of the Town Council of the

Town of Surfside." There was further imbedded in the building permit the condition that it might be "revoked at any time upon the violation of any provisions of said laws, ordinances or rules and regulations, or upon any change in plans and specifications unauthorized by the Town of Surfside."

The construction of the building proceeded in accordance with the plans until the 2nd day of August, 1941, when the work was halted by the chief of police, armed with a resolution adopted by the town council that day. The substance of the resolution was that the hotel was being built in violation of the zoning ordinance which prohibited 'any portion or projection" of a building from being "closer than forty (40') feet to the high water mark of the Atlantic Ocean at the time said building is erected." In the first part of June, 1941, about a month before the building permit was issued and approximately eight months after the first survey, a new survey was made by appellant's engineers preparatory to the construction of a sea wall and groins. The plans and specifications, based on the later survey, which accompanied the application for a permit for this particular work, clearly showed that the shore of the Atlantic Ocean had receded for such a distance that the remainder of the lot would not accommodate a building of the proportions shown in the plans filed with the application granted 15 July 1941, without encroaching upon the prohibited area. Although the appellant insists that at the time he applied for a permit to construct the hotel, in accordance with the survey made in October, 1940, he had not been apprised of the retreating shore line discovered by his engineers the month before, we think that the

chancellor was correct in his conclusion that in all the circumstances the appellant had been put upon notice of the shrunken dimensions of the property.

We recognize it as the general rule that a "building permit issued in violation of law or under mistake of fact" may be rescinded although construction may have been commenced. 9 Am. Jur., Buildings, page 204. By this authority it is stated that some decisions recognize the doctrine of equitable estoppel against the city under certain circumstances but we do not find in this record a situation which will justify invoking the exception, bearing in mind, too, that at the time the permit for the construction of the building was granted there was on file in the city office the plat on which was based the permit for the construction of the sea wall and groins and by comparison of the two the city officials would have discovered the discrepancy in the east line of the property.

When the appellant received written permission to proceed with the construction of his hotel he was confronted with the statements in the building permit which we have quoted and knew, therefore, that all facts given in his application were accepted as true and that any deviation from the plans or any failure to comply with the ordinance of the municipality would cause its revocation. Aside from any question of concealment there was not only a misunderstanding by the municipal officials and by the appellant, accepting his statement of his ignorance of changed conditions, which in itself would have been sufficient under the above rule to have warranted a cancellation of the building permit, but it also developed that because of the diminished size of the property, the completed building would stand partly within the pro-

hibited distance of the Atlantic Ocean and thereby the ordinance which we have cited would have been violated. Then, too, it developed that an essential representation in the application for the permit to build the hotel was so inaccurate as to result in the violation of that ordinance.

Despite the appellant's insistence that a full discussion of the actual physical condition of the property was indulged in at a meeting of the city council immediately preceding the issuance of the permit, the record of the minutes of that meeting discloses no action taken by the city council on the precise subject of nearness of the east wall of the proposed building to the Atlantic Ocean. There does appear a reference to an amendment of the zoning ordinance to allow construction of cabanas which we will discuss later in this opinion. It is significant that on August first, which it will be recalled was about two weeks after the appellant was authorized to proceed with the building, a resolution was unanimously adopted by the city council reciting that appellant had on many occasions represented that the proposed building would conform to the zoning ordinances and that it had been discovered that the building was being constructed in "flagrant violation of said zoning requirements." Thus, the officials of the town declared the building permit void and revoked it. We conclude that the lower court correctly interpreted the evidence and applied the proper legal principles in upholding the action of the city council in stopping any further progress of the work when it was learned by that body that further progress would simply result in a violation of one of the city ordinances which it was their duty to enforce.

Up to this point we have discussed only the construction of the hotel. We now proceed to describe the cabanas which were to be built in connection with that project and to be located between the building and the Atlantic Ocean. Consideration of the cabanas appears necessary in view of one of the questions proposed by the appellant and the order of the lower court permanently restraining him from erecting any buildings under the permit and, specifically, from constructing any cabanas on the land in question.

It is conceded by the appellant in his brief that these cabanas, if built, would be located within forty feet of high water mark of the Atlantic Ocean and that plans for them were included "with the hope and expectation that the authorities of the Town of Surfside would consider them part of the main building and would authorize their construction." Contention is made that they were designed as separate units because appellant could not anticipate what decision the city council would make with reference to them. Upon objection on the part of the building inspector to the cabanas they were discussed by the town council with the result, so it is asserted, that their construction was permitted with full knowledge that they would be within the prohibited distance from the ocean. We fail to find such authorization in the record. There does appear, however, an excerpt from the minutes of the council containing the recital that it "took under consideration the request of R. W. Godson for certain concessions in connection with a proposed building" and "after discussion" it was "moved that [appellant] be permitted to build cabanas . . . provided the plans and specifications were approved by the Town Planning Board.

Apparently, the only authorization for the erection of these cabanas was a motion of the town council although the zoning restrictions were incorporated in an ordinance. Revision of the ordinance, prescribing zoning to suit the individual case of the appellant could not be legally effected in this way. City of Coral Gables v. City of Miami, 138 Fla. 881, 190 So. 427. This rule would not apply, of course, unless the cabanas were of such character as to constitute a "building" as contemplated in the ordinance and described there as "anything constructed or erected, the use of which demands a permanent location on the land; or anything attached to something having a permanent location on the land." The so-called cabanas were to be built of reinforced concrete set on piling and attached to the main building with a "slip joint" which the architect said was necessary because of the contrasting weights of the two structures. They did not possess the characteristics of temporariness or impermanence suggested by the definition of cabana as "a cabin; small house; a small detached bathhouse." Webster's International Dictionary, Second Edition, Unabridged. It seems to us that a building of that type easily falls within the definition of structures covered by the zoning ordinance and is not encompassed in the definition of cabanas we have given. The lower court was correct when it found they were a part of the main edifice.

With the wisdom of the town council in enacting the zoning ordinance we are not concerned, but it does not seem inappropriate to observe that they properly rescinded the permit for the main building when they discovered that its construction would result in a violation of the ordinance and that they acted

with equal propriety when they prevented completion of the cabanas which were not sufficiently authorized in the beginning. It was of utmost importance to the other property owners and residents of the area where the Town of Surfside is located that the general pattern outlined for the construction of buildings be followed. City of Miami Beach v. Ocean & Inland Co., Fla., 3 So. 2nd 364. They were thoroughly justified in their efforts to discontinue the work although the inconvenience, or even financial loss, of the appellant resulted.

From a perusal of the record we are convinced that no error was committed by the lower court, and therefore, the decree is—

Affirmed.

BROWN, C. J., TERRELL, and CHAPMAN, JJ., concur.