302 So.2d 435 (1974)
UNITED SANITATION SERVICES OF HILLSBOROUGH, INC., Appellant,
v.
CITY OF TAMPA, a Municipal Corporation of the State of Florida, et al., Appellees.
No. 73-860.
District Court of Appeal of Florida, Second District.
October 16, 1974.
Rehearing Denied November 21, 1974.
*436 Arnold D. Levine of Levine, Freedman & Hirsch, P.A., Tampa, for appellant.
Henry E. Williams, Jr., City Atty., Tampa, for appellees.
SCHWARTZ, ALAN R., Associate Judge.
The collection of garbage is certainly a useful, indeed an indispensable, part of urban society. The private business of its collection, however, is not, nor has it ever been, akin in any way to "ordinary" examples of private enterprise  the selling of shoes, the repair of automobiles, or the selling of motel rooms. As the cases, from the time when the business was referred to as "scavenging" and those who conducted it as "scavengers" until the present, have recognized and clearly established, the "enterprise" of garbage collection is one of those unique callings which are subject to the plenary power of government. Unlike virtually every other enterprise, the "business" may not only be regulated, but in fact exclusively performed  as an essential part of a "public service"  by municipalities or other governmental subdivisions, even if such a decision results in the complete preclusion of private facilities for the same use. See Clein v. Lee, 146 Fla. 306, 200 So. 693 (1941); City of Jacksonville v. Nichols Engineering & Research Corp., Fla. 1950, 49 So.2d 529; Annotation, Garbage Removal Services-Regulation, 83 A.L.R.2d 807; 7 McQuillin, Municipal Corporations, §§ 24.243, 24.250, 24.251. The essential and insurmountable difficulty with the position of the appellant in this interlocutory appeal from an order denying an application for a temporary injunction against the enforcement of City of Tampa ordinances which regulate the ability of private enterprises to collect garbage within the municipality, is that it utterly ignores this essential distinction between the appellant's business and virtually every other. It proceeds on the assumption that affirmative showings of a relationship between the ordinances and the public "health, safety or welfare" are required in order to sustain the ordinance, when, to the contrary, the mere fact that it is garbage collection which is being regulated, even "taken over" by the City, itself and alone provides the necessary justification for the enactments.
In 1953, the City of Tampa enacted a series of ordinances regulating the private collection of garbage within the City. The ordinances essentially forbade such private collection without the receipt of a permit from the City to do so. They also provided for a means by which private persons or companies who produced garbage which could not be handled efficiently by the City could themselves and individually apply for and receive permits for the collection of their waste by private companies such as the appellant in this case, one which had already received its permit to conduct that business. The key provisions of these regulations provide as follows:
"Sec. 17-5. Permit required to collect garbage, trash, etc.

"It shall be unlawful for any person to collect, gather or pick up any paper, trash or garbage upon or off of any street, sidewalk or alley of the city without first receiving a permit so to do from the city. (Ord. No. 1382-A, § 1, 7-3-51; Code 1953, § 18-61)"

*437 "Sec. 17-6. Private collection service  Permit and license requirements.

"Whenever by reason of the nature, size, volume, shape, or character of any garbage or trash it shall not be possible, safe, feasible, or practicable for said garbage or trash to be collected, transported, and disposed of by the equipment and facilities of the department, the owner, tenant, or occupant of the premises upon or from which such garbage or trash is produced or accumulated may upon written application therefor upon forms to be provided by the superintendent, obtain a permit from the superintendent to collect, transport, and dispose of the same. It shall be unlawful for any person to bid upon, contract for, or engage in the business of, or allow himself to be employed for the collection, transportation, or disposal of garbage or trash within the city without first making written application for and obtaining a permit therefor from the superintendent and occupational license from the treasurer of the city unless such collection, transportation, or disposal is incident to an occupational license. (Code 1953, § 18-75.12; Ord. No. 2677-A, 11-10-59)"[1]
In 1963, in accordance with what it says were "oral agreements" with the then-mayor of the City and the Directors of the Sanitation Department to that effect, the appellant began to do business within the City of Tampa in the collection of garbage and waste from private businesses within the City. The terms of the regulation itself were apparently scrupulously complied with  that is, United Sanitation Services secured its own permit and occupational license, and those who desired to do business with it likewise secured the permits required by Section 17-6 upon the implied finding by the Sanitation Department that it was not "possible ... or practicable for [that] garbage or trash to be collected ... by ... the [Sanitation] Department ..." itself. In 1973, however, the City's Sanitation Department represented that it was then able, because of its acquisition of new equipment, practicably and efficiently to handle the "containerized" garbage or trash which the appellant had been handling. Accordingly, it served notice that it would thereafter deny applications under Section 17-6 for private permits. United Sanitation then brought this action to restrain the enforcement of Section 17-6 so as, in effect, to preclude the denial of permits for its private customers to do business with it. It applied to the Circuit Court for a "temporary restraining order" to this effect. After due notice to the City (which turned the application into what was essentially one for a "preliminary injunction" rather than a temporary restraining order, which is usually thought of as being granted without notice), and after a hearing at which apparently only a representative of the plaintiff testified, subject to cross-examination by the City Attorney, the trial judge denied the application, and United Sanitation took this interlocutory appeal. We affirm.
It is, of course, hornbook law that, particularly in the case of an application for restraining the enforcement of a municipal ordinance, e.g., Orange City v. Thayer, 45 Fla. 502, 34 So. 573 (1903) temporary restraining orders or injunctions should be very cautiously granted, North Dade Water Co. v. Adken Land Co., Fla.App.3d 1959, 114 So.2d 347; 17 Fla.Jur., Injunctions, § 12, pp. 381-382; that the determination of such an application is primarily within the *438 discretion of the trial court, McMullen v. County of Pinellas, 90 Fla. 398, 106 So. 73 (1925); and that the exercise of that discretion will not be reversed on appeal without a clear showing of its abuse. E.g., Cunningham v. Dozer, Fla.App.3d 1963, 159 So.2d 105. Not only do we find no abuse of that discretion here; it is likely that a contrary ruling, granting the temporary injunction, would itself have been erroneous and reversible.
It is well established that one of the primary bases for the exercise of discretion in the grant or denial of a motion for a preliminary injunction is the likelihood of the ultimate success of the applicant on the merits of the suit. E.g., 42 Am.Jur.2d, Injunctions, § 285, p. 1079. In this case the substantive positions of the appellant in its attacks upon the enforcement of the ordinance seem, on their merits, so unlikely of eventual success that this ground alone is more than sufficient to sustain the Chancellor's exercise of discretion below. As we have intimated, the primary contention of the appellant here is that, since it is doing a good job of itself collecting garbage in the City of Tampa, and since, it says, its private customers would prefer to have it collect the waste, rather than the City, there is no reason in the protection of the "public safety, welfare and morals" which would justify the attempted regulation of its private business. As we have said, this contention simply cannot be sustained in the light of the applicable  in fact, universal  law which provides that a City may require that it be the sole and exclusive provider of garbage service within its jurisdiction. See, e.g., Clein v. Lee, supra; and cases and authorities cited, supra; Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761 (1935). None of the cases or authorities cited by the appellant, all of which would bear upon the regulation of "ordinary" private business, have anything to do with the business here in question  any more than they would have to do with a private attempt to operate a post office or provide police protection.
The other, more peripheral, challenges to the ordinance itself are similarly without substance. United Sanitation contends, for example, that the provisions of Section 17-6 which refer to a determination by the City as to when it is not "possible, safe, feasible, or practicable" for the City to collect garbage constitute an unlawful and uncertain delegation of authority to the City officials concerned. We think to the contrary, that the ordinance provides more than sufficiently definite guidelines to justify the provisions in question. Were there any question concerning this matter, the recent decision of the Supreme Court in Thomas v. City of West Palm Beach, Florida, 299 So.2d 11, opinion filed July 24, 1974, has dispelled it. There, the Supreme Court held constitutional an ordinance which permitted a building official to determine whether a dwelling was "unfit or unsafe" for human habitation. The ordinance before us seems, if anything, far more precise than that one.
United Sanitation also contends that, because of the alleged agreement between it and certain City officials to permit it to do business and to issue the permits in question, the City is "estopped" to enforce the ordinance, contrary to the agreement. It relies upon such cases as City of North Miami v. Margulies, Fla. App.3d 1974, 289 So.2d 424. These cases are totally inapplicable here. In the Margulies case, the City Council  which was responsible for the governmental action in question  had agreed, and later reneged, upon a particular decision. In this case, it is obvious that neither the mayor nor the head of the Sanitation Department had the authority to agree, in essence, to the non-enforcement of a valid and duly enacted city ordinance. Any such agreement was both entirely beyond the power of the officials in question to make, and was unlawful even if they possessed that power. The law is entirely clear that no estoppel can be sustained against a municipality under such circumstances. E.g., Godson v. Town of Surfside, 150 Fla. 614, 8 So.2d 497 (1942); Hoskins v. City of Orlando, 5 *439 Cir.1931, 51 F.2d 901 (1931); 12 Fla.Jur., Estoppel and Waiver, § 84, pp. 477-480.
Finally, the appellant contends that the City should "at least" be enjoined from "altering the status quo," and from "slandering" it to its private customers. Again, we see no basis for the granting of relief in either instance. The only "status quo" which is being altered is the refusal, in accordance with the ordinance, to issue future permits to United Sanitation's private customers. As we have already held, that action is completely justified. As for the alleged "slander," we see nothing in the record to justify the allegation that any defamation has in fact taken place. Even if it had, there would be no basis for a failure to follow the well established rule that equity will not enjoin either an actual or a threatened defamation. Reyes v. Middleton, 36 Fla. 99, 17 So. 937 (1895); 20 Fla.Jur., Libel and Slander, § 102, p. 619.
Affirmed.
HOBSON, A.C.J., and MANN, J. (ret.), concur.
NOTES
[1] Among other things, the appellant claims some fatal ambiguity or confusion in the fact that one need not secure an occupational license for the disposal of garbage or trash if that disposal "is incident to an occupation for which such person holds a current occupational license." The appellant contends that this provision may apply to it, since it holds an occupational license for the collection of trash itself. We find no difficulty whatever in rejecting both this claim and that of ambiguity; it is apparent that the "exception" applies to a situation in which a company or person is simply disposing of its own trash produced in the course of another occupation  tree removing, for example  for which it holds another license.