QUESTION:
May the City of Lake Worth contract for and utilize the services of Lake Worth Utilities Authority, an independent agency of the city, for the purposes of billing, collecting, and accounting for waste removal fees imposed by ordinance for the collection of garbage and trash by the city?
SUMMARY:
A municipality may validly provide for the collection and disposal of solid waste and other refuse as a municipal or public service and may by ordinance impose a user fee or charge for such services. Subject to the restrictions of the City of Lake Worth's 1975 charter regarding competitive bidding, the City of Lake Worth may contract for and utilize the services of the Lake Worth Utilities Authority, a separate and independent agency of the city, for the purpose of billing, collecting, and accounting for waste removal fees imposed by the city on its residents and businesses for the collection of garbage and trash by the city.
According to your letter, the City of Lake Worth has enacted an ordinance which provides for the imposition of a waste removal fee on city residents and businesses for the collection of garbage and trash by the city. The waste removal fee is to be added as a designated additional element or item on the monthly bills for water and electricity rendered by the Lake Worth Utilities Authority to its customers. Collection of the waste removal fee is made by the authority for the city, and an appropriate sum for the aggregate waste removal fees so collected is turned over to the City Finance Director. The authority was created by special act, Ch. 69-1215, Laws of Florida, and operates as a separate, autonomous unit of city government, free from the jurisdiction and control of the city commission and other city officers except as otherwise provided in the act. Section 1, Ch. 69-1215.
Under the broad home rule powers granted by Ch. 166, F. S., municipalities have the authority to provide for the collection and disposal of solid waste and other refuse. Section 166.021(1) grants municipalities `governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services . . . .' It further empowers them to exercise any power for municipal services except when expressly prohibited by law. See City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974); cf., Stone v. Town of Mexico Beach, 348 So.2d 40 (1 D.C.A. Fla., 1977), holding in pertinent part that a town has the authority to impose a flat rate, regardless of use, to fees charged for the collection and disposal of garbage. The collection and disposal of solid waste and other refuse constitutes a valid municipal function or purpose; thus, in the absence of an express statutory prohibition, a municipality has the authority under its home rule powers to provide this municipal service. See United Sanitation Service, Inc. v. City of Tampa, 302 So.2d 435, 436 (2 D.C.A. Fla., 1974), and cases cited therein, in which the court described the collection of garbage as `an essential part of a `public service' — by municipalities and other governmental subdivisions,' subject to the plenary power of government. See also the City of Lake Worth's former charter which provided that the city had the power to `furnish any and all local public services' and to collect and dispose of sewage, garbage and other refuse. Sections 3(8) and (15), Ch. 25962, 1949, Laws of Florida. These former charter provisions were converted into city ordinances, subject to modification or repeal, by s. 166.021(5), F. S. The present charter contains similar provisions. See s. 3(8) and (15), 1975 charter.
In addition, the city has the authority to impose a fee for the use of this municipal service. Cf. Stone v. Town of Mexico Beach,348 So.2d 40 (1 D.C.A. Fla., 1977), holding in pertinent part that the town could impose a flat rate, regardless of use, to fees charged for the collection and disposal of garbage. Section166.201, F. S., provides in pertinent part that a municipality may impose `user charges or fees authorized by ordinance . . . [and] enforce their receipt and collection in the manner prescribed by ordinance not inconsistent with law.' See also s. 1, Ch. 77-50, Laws of Florida [now s. 166.043(1), F. S. 1977], which provides that the provision of the act regarding ordinances and rules imposing price controls `shall not prevent the enactment by local governments of public service rates otherwise authorized by law; including . . . solid waste . . . .' Even prior to the enactment of Ch. 166, F. S., municipalities maintaining or operating a service for the collection and disposal of garbage, trash, and other refuse were expressly empowered by the Legislature to provide by ordinance for the establishment and collection of reasonable charges to be paid to the city for the use of such services. Section 167.73(1), F. S. 1971. The statute also provided that, if the charges were not paid when due, the service could be discontinued and the delinquent charges recovered by due process of law. Chapter 167, F. S. 1971, was repealed in 1973 by the Municipal Home Rule Powers Act, Ch. 166; however, under s.166.042(1) the repeal of Ch. 167 `shall not be interpreted to limit or restrict the powers of municipal officials.' Thus, Ch. 167, and s. 167.73 specifically, although repealed, are still viable as a grant of municipal power under Ch. 166. Cf. Penn v. Pensacola-Escambia Governmental Center Authority, 311 So.2d 97,101 (Fla. 1976). Moreover, municipalities may continue to exercise those powers conferred by Ch. 167 at their own discretion and subject only to those terms and conditions which they choose to prescribe. Section 166.042. The present charter provides that the city has the power to impose rates for public utilities or other services furnished by the city or any other person or corporation. Contracts between the city and public utility companies fixing rates are, under the present city charter, legal and enforceable contracts. Section 3(11) of the 1975 charter. See also s. 3(3) of the 1975 charter which provides that the city may impose special or local assessments upon real property upon nonpayment by the owners thereof for waste removal fees for garbage and trash collection services. The assessments are payable at the time and in the manner determined by the city commission. Cf. Stein v. City of Miami Beach, 250 So.2d 289 (3 D.C.A. Fla., 1971), upholding an ordinance of the City of Miami Beach which provided for the imposition of special assessment liens upon real property following nonpayment by the owners of such property for garbage fees; and Stone v. Town of Mexico Beach, 348 So.2d 40 (1 D.C.A. Fla., 1977), holding that a town had legal authority to impose a lien on property for the property owners' nonpayment of garbage collection charges. On the basis of the foregoing provisions, it appears that the City of Lake Worth may establish the manner in which user charges or fees for the collection and disposal of garbage and other refuse will be billed and collected. In so providing, the city may contract for and utilize the services of a public or quasi-public agency or organization provided ultimate control remains with the city commission. Cf. O'Neill v. Burns,198 So.2d 1 (Fla. 1967).
Section 4(16)(i) of the 1975 charter, as amended, provides:
 Contracts for services, construction, materials or supplies of any nature amounting to five thousand dollars ($5,000.00) or more, shall not be let without the approval of the city commission and on competitive bidding on a public call for bids with proper notice, except such services as cannot be contracted for upon the basis of competitive bidding.
The foregoing charter provision must be complied with before the city may enter into a contract with a separate autonomous public agency or utilities authority, such as the Lake Worth Utilities Authority, for the necessary billing, collecting, and accounting services. Assuming that the terms of the foregoing charter provisions are met, the city under its home rule powers may contract with the Lake Worth Utilities Authority for these services. The authority may, but is not required to, contract with the city to bill, collect, and account for these fees. Cf. s. 7, Ch. 69-1215, Laws of Florida. It should be noted that the special act creating the utility authority specifies that the flow of funds collected by the authority from prescribed fees and charges shall be as follows:
 First: The payment of all operating and maintenance expenses of the utilities and the capital outlay provided in the current annual budget;
 Second: Debt service payments and any deposits required to be made in Sinking Funds or Reserve Funds for bonds, revenue certificates, or promissory notes, heretofore issued by the City or hereafter issued by the Authority for the utility systems;
 Third: The payment to the general fund of the City under control of the City Commission of a sum equal to 10% of the gross revenues of the utility systems, and such payment be made monthly. In the event of a deficiency in any monthly payment to the general fund, increased payments shall be made from the first revenues which are available in succeeding months after the first and second payments required by this section have been made until the deficinecy [sic] is eliminated.
 The accumulated earnings retained after first, making the payments required herein; and, second, reserving an adequate balance for the payment of current expenses and for the extension and replacement of the capital assets of the systems, as determined by the Authority but subject to review by the City Commission, shall be paid annually to the general fund of the City under control of the City Commission. [Section 11, Ch. 69-1215, Laws of Florida.]
The utilities authority should receive reasonable compensation for the billing, collection, and accounting services it renders to and for the city; such compensation should be provided for in the contract for these services between the city and the utilities authority. In addition, the contract should set forth in detail responsibilities of each entity with respect to these services and the distribution of and accountability for the waste removal fees so collected.
Your question, as stated, is answered in the affirmative.
Prepared by: Joslyn Wilson Assistant Attorney General