FARMER, J.
“The Strip” is a club that provides entertainment to adults consisting of stage *1101 performances and lap dances, all done by nude women. It does not serve alcoholic beverages. Since 1984 the Strip has been designated as a private club on its occupational license issued by the City of Fort Lauderdale. In 1998, the club’s owner was arrested for violating the state statute declaring it unlawful for any person to own or operate a place for the purpose of providing prostitution, assignation, or lewdness.[1] Its dancers were also arrested for violating the statute making it unlawful for any person to offer, commit, or engage in prostitution, assignation, or lewdness.[2] Police officers testified that, while they were undercover and in the club, dancers solicited each of them for sex. No convictions resulted from these arrests.
The owner of the club, along with one of its dancers and a member, filed an action in the circuit court seeking an injunction against enforcement of the statutes in question. Plaintiffs argued that because the club is private section 796.07 is unconstitutional as applied to it. They also sought a declaratory judgment that section 796.07 is facially unconstitutional because it imposes strict liability on the club’s owner without any scienter requirement. After a trial, the court found that the club is not private and denied all relief. This appeal followed.
Claimants first argue that section 796.07 is unconstitutional as applied to the club because the trial court erred in finding that it is not really a “private” club and the City’s enforcement of the statute therefore violates their rights under the First Amendment. They emphasize the following evidence as supporting their contention of error:
a.The articles of incorporation designate the club as private.
b. The club has been licenced by the City as a private club for the last 15 years.
c. Temporary members of the club, members for only one night, pay a membership fee of $10 to enter the club and must sign a membership form.
d. The club has “charter” members who pay $100 for a one-year membership, whose membership entitles them to enter the club at any time without having to read the membership rules.
e. Since July 1999 the club announces nightly that it is private.
f. There was testimony that the club’s “doormen” were actually seen to turn patrons away at the door, that persons who refuse to sign the membership rules are denied admission, and that recently the club has begun keeping records of people rejected from club membership.
g. The. club advertises that it is private, and its signs state that it is private.
h. The club maintains a roster of all members.
In concluding that the club was not actually a private club, the trial court made the following factual findings.
1. The club was initially designated as public in its incorporation papers, and the articles were amended to state that it is private only because the building did not have adequate parking for a club open to the public.
2. The fee of $10 that a patron pays for joining as a “temporary member” for the night is “nothing more than a cover charge.”
*1102 3. Membership in the club is not limited in any meaningful way; nor is there a structured membership committee.
4. There are no standards for admission to membership, and there is no formal admission procedure.
5. Members do not control the opera- . tion of the club in anyway.
6. Members derive no share in the proceeds of money paid for lap dances or VIP room time. Members receive no benefits from the club other than the lap dances, which they paid extra for anyway.
Moreover the record establishes that:
7. The outside advertisement as an “All Nude Cabaret” lacked any indication that the club is private until this litigation began.
8. Temporary members are not required to show identification or provide an address or telephone number.
9. Undercover police testified that their admission into the club as “members” took about twenty to thirty seconds, including paying the cover charge and signing the membership rules.
It is well settled that an appellate court will not substitute its judgment for that of the trier of fact where there is competent, substantial evidence to support the trial court’s finding. See Markham v. Fogg, 458 So.2d 1122, 1126 (Fla.1984); Leeb v. Read, 190 So.2d 830, 833 (Fla. 3d DCA 1966) (“It is established in Florida that an appellate court is not warranted in disturbing the trial judge’s findings in a non-jury law case unless they are clearly erroneous.”). Here, there is substantial, competent evidence to support the trial court’s finding that this club is not really private.
The evidence shows that there is no selectivity as to who may join because any person can enter the club upon payment of the $10 cover charge and signing the membership rules; dues are not substantial; the number of members is not limited; members have no control over the admission of other members and only a doorman controls who may enter the club; there are no formal admission procedures; and club members have no control over the club’s operations.
Because the club is not private, it follows that the City is not violating claimants’ First Amendment rights by enforcing section 796.07. See State v. Davis, 623 So.2d 622, 624 (Fla. 4th DCA 1993) (finding section 796.07 constitutional because the state’s compelling interest in outlawing prostitution, assignation and lewd behavior in public places outweighs the right to privacy); Hoskins v. Dep’t of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 592 So.2d 1145, 1146 (Fla. 2d DCA 1992) (holding that “lap dances” performed in public are lewd conduct violating section 796.07 and are not a constitutionally protected form of free speech).
Claimants argue that the City should be equitably estopped from refusing to recognize the club as private because for the last fifteen years the City has issued the club an occupational license designating it as a private club. In order to prove that an estoppel is warranted, claimants were required to prove the City made a representation as to a material fact that is contrary to the City’s later position; that they relied on that representation; and that they changed their position detrimentally because of the City’s representation and their reliance on it. See State Dep’t of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981). Claimants failed to prove these elements.
The club’s articles of incorporation were amended to designate the club as private *1103 only to insure that the club would be in compliance with the City’s parking and zoning ordinances. After the amendment, the club sought a designation on its occupational license of “private.” Thus, it cannot be said that the club relied on the City’s designation that it was private.
Moreover, the mere issuance of an occupational license is not, without more, a representation as to a material fact. This license is simply an instrument of taxation issued by the City without investigation of the actual operations of an applicant. The City issued these licenses for revenue purposes upon the club’s own representations and without inspection of the club. See City of Clearwater v. Abdullaj, 474 So.2d 1290, 1291 n. 1 (Fla. 2d DCA 1985) (disagreeing with trial court’s ruling that actions of city in granting occupational license constituted equitable estoppel). Moreover, the mere issuance of an occupational license designation should not lead to a limitation on the City’s duty to enforce laws against prostitution, lewdness, and assignation. See United Sanitation Serv. of Hillsborough, Inc. v. City of Tampa, 302 So.2d 435, 438 (Fla. 2d DCA 1974) (refusing to estop city from enforcing ordinance as inconsistent with previously issued occupational license because licensing body does not have the authority to agree to non-enforcement of valid city ordinance); see also North Am. Co. v. Green, 120 So.2d 603, 610 (Fla.1959) (“The instances are rare indeed when the doctrine of equitable estoppel can effectively be applied against state action.”).
Claimants also maintain that the statute is facially unconstitutional because it omits a scienter requirement and imposes strict liability on the club’s owner. Section 796.07(2)(a) makes it unlawful for any person to “own, maintain, or operate any place, structure, building, or conveyance for the purpose of lewdness, assignation, or prostitution.” There is no explicit requirement that the owner know' of or participate in the unlawful activity taking place in the building.
Strict liability statutes are not unconstitutional simply because they impose imprisonment as a punishment. See Lockett v. Ohio, 438 U.S. 586, 602, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (upholding the constitutionality of a felony murder statute); United States v. Freed, 401 U.S. 601, 608, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (upholding statute prohibiting possession of unregistered hand grenades as constitutional even though no specific intent or knowledge to prove violation is required); United States v. Dotterweich, 320 U.S. 277, 284, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (upholding conviction for transporting drugs even though statute did not contain explicit scienter requirement). Nor is proof of specific intent always required as a matter of state law. See State v. Hubbard, 751 So.2d 552, 564-65 (Fla.1999) (DUI manslaughter statute); Quinn v. State, 751 So.2d 627, 628 (Fla. 4th DCA 1999) (holding that section 943.0435, punishing failure of sex offender to register, is not facially unconstitutional because it lacks mens rea requirement). In fact we have previously held that section 796.07 is not facially unconstitutional simply because it omits a scienter requirement and imposes strict liability on an offender. See, e.g., State v. Conforti, 688 So.2d 350, 356 (Fla. 4th DCA) (holding that section 796.07(l)(b) is facially constitutional), cert. denied, 697 So.2d 509 (Fla.1997). We therefore reject claimants’ argument of facial unconstitutionality.
AFFIRMED.
GROSS and TAYLOR, JJ., concur.

. § 796.07(2)(a), Fla.Stat. (1999)

. § 796.07(2)(e), Fla.Stat (1999).