844 So.2d 681 (2003)
SUN CRUZ CASINOS, L.L.C., Casino Cruises, Inc., and 6024 North Ocean Drive, Inc., Appellants/cross-appellees,
v.
CITY OF HOLLYWOOD, FLORIDA, M.R. Acquisition Corporation, and WLD Restaurateurs, Inc., Appellees/cross-appellants.
No. 4D02-224.
District Court of Appeal of Florida, Fourth District.
April 23, 2003.
Rehearing Denied May 29, 2003.
*682 Ace J. Blackburn, Jr. and Warren B. Kwavnick of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., and Martin B. Woods of Sterns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Fort Lauderdale, for Appellants/cross-appellees-Sun Cruz Casinos, L.L.C. and 6024 North Ocean Drive, Inc.
Daniel L. Abbott, City Attorney, Hollywood, and Jamie Alan Cole and Douglas R. Gonzales of Weiss Serota Helfman Pastoriza & Guedes, P.A., Fort Lauderdale, for Appellee/cross-appellant-City of Hollywood.
Vanessa A. Reynolds and Douglas T. Marx of Conrad & Scherer, LLP, Fort Lauderdale, for Appellees/cross-appellants-M.R. Acquisition Corporation and WLD Restaurateurs, Inc.
STONE, J.
Sun Cruz Casinos, L.L.C. (Sun Cruz) appeals, and the City of Hollywood, M.R. Acquisition Corporation and WLD Restaurateurs, Inc. cross-appeal a final judgment which found the city was estopped from enforcing its zoning code as to the operation of two ships in a "cruise to nowhere" gaming ship operation while failing to find estoppel as to the same parties' operation of a third ship. We affirm as to all issues raised.
Sun Cruz operates "cruise to nowhere" gaming ships from the dock of Martha's Restaurant on the intracoastal waterway in Hollywood, Florida. The restaurant on the waterway is a permitted use in an otherwise hotel-motel multiple family residential section of Hollywood. M.R. Acquisition Corporation and WLD Restaurateurs, Inc., through a managing partner, George Zinkler (Martha's, collectively), lease the Martha's property from Mr. Gus Boulis.
In 1995, Martha's entered into an agreement and sublease with Mr. Boulis and Sun Cruz for the cruise ship operation from its dock. Martha's also obtained additional lots, for approximately $500,000, to provide parking sufficient to satisfy the city's parking requirements. Martha's Restaurant also provides food and beverage consulting services to Sun Cruz.
In 1995, prior to entering into the dock lease, Mr. Zinkler met with city officials to determine if a gaming boat would be an allowable use of the property. He met with George Keller, the city's director of development administration, and Jud Kurlancheek, *683 the city's director of community planning. By letter dated November 1, 1995, Jud Kurlancheek notified Mr. Zinkler that a large gaming boat would, in fact, be a permitted accessory use at Martha's. This expression by the planning director was authorized by section 4.20 of the city's zoning code which gave the community planning director the express authority to make an accessory use determination. An "accessory use" is defined in the zoning code as "any use that is customarily associated with a Main Permitted use."
Subsequently, and pursuant to these discussions, the city approved Mr. Zinkler's request for an administrative variance allowing Martha's Restaurant to utilize a temporary parking lot opposite Martha's to accommodate the additional parking that would be required for Sun Cruz's passengers. The parking lot was also deemed to be an accessory use.
An occupational license application was submitted by Sun Cruz for the operation of the first boat, the Sun Cruz III, with a capacity of 375 persons. Before issuing the occupational license, the city made a determination that the applicant's business complied with zoning requirements. The city's approval of the license confirms that the city determined that the Sun Cruz operation was a valid accessory use to Martha's.
In 1997, Sun Cruz submitted a second application for an occupational license for a larger boat, the Sun Cruz V, with a capacity of 460 passengers. The city approved the application, again finding that Sun Cruz was an accessory use that complied with the city's zoning requirements.
In 1997, the city amended portions of the city's zoning code, for the benefit of Sun Cruz, slightly altering the definition of "accessory use" and changing the parking regulations so that the Sun Cruz operation could utilize off-site parking to meet the city's parking requirements. Sun Cruz then bought several buses to shuttle passengers from off-site parking lots to the property. A third, larger boat, the Sun Cruz VI, arrived in 1998. The city, however, did not issue a license for the Sun Cruz VI.
In late 1998, shortly after the Sun Cruz VI began operation without a license, the city sought to remove the Sun Cruz operation from the marina, contending that Sun Cruz VI did not meet the definition of an "accessory use" to the property. The city filed a complaint seeking declaratory and injunctive relief to prevent the property from being used in connection with the Sun Cruz operation. The complaint alleged that the only permitted use for the property was as a "restaurant with frontage on the Intracoastal," and that the Sun Cruz operation was neither a "main" permitted use nor a valid accessory use.
Martha's filed a counterclaim against the city claiming estoppel and seeking declaratory relief, asserting that the city should be prevented from challenging Sun Cruz's use of the property in light of the history of approvals. An expert for the city testified that the Sun Cruz operation was neither a permitted use or accessory use of the property, while an expert for Martha's testified that it was a valid accessory use.
Following an evidentiary hearing, the court made extensive findings of fact and went on to find in favor of Martha's and Sun Cruz as to the Sun Cruz vessels III and V, but in favor of the city as to Sun Cruz VI. The court found that the clear weight of the evidence showed that the city represented to Martha's that the Sun Cruz business would be a permitted accessory use at the restaurant and that Martha's relied to its detriment on the city's prior acts of authorization and approval as to Sun Cruz III and V.
*684 In reaching its decision, the trial court concluded that, absent the city's estopping conduct, there is no "customary" association between gaming boat operations and waterfront restaurants. Therefore, such an operation is not an accessory use under the city's zoning code, but only as founded on an estoppel against the city.
The trial court, therefore, ordered that, as to Sun Cruz III and V, the city's claims for declaratory and injunctive relief were denied and that Martha's counterclaim, founded on the city being estopped from changing its position, be granted. As to Sun Cruz VI, however, there was no finding of estoppel against the city. The court enjoined Martha's and Sun Cruz from allowing the use of the property for the gaming cruise uses as they relate to Sun Cruz VI.
With respect to the Sun Cruz appeal, we conclude that the trial court did not err in determining that the Sun Cruz operation, but for the estoppel, was not a lawful accessory use as to any of the Sun Cruz vessels.
The trial court had competent, substantial evidence to support its finding that the ship related uses were not customarily associated with the main permitted use, a restaurant with frontage on the intracoastal. The definition of "accessory use" as provided by the city's zoning code and adopted by the trial court is "any use that is customarily associated with a main permitted use." The zoning code does not provide a standard to follow in determining what is "customarily associated" with a main permitted use. The evidence, however, produced by the city showed that out of all the other restaurants on the intracoastal in Broward county, only Martha's has a large, ocean-going vessel associated with it and the expert for Sun Cruz could only identify a possibility of one other restaurant having a large vessel of any kind associated with it.
The trial court's final judgment is somewhat confusing at one point in that the final judgment states that "the Sun Cruz operation was an accessory use to Martha's Restaurant, as opposed to any other restaurant with intracoastal frontage." A reading of the entire judgment, however, clearly reflects that the judgment was predicated upon a finding of estoppel, not a finding of accessory use. The term "accessory use" as used by the trial court was obviously intended as a term to describe the relationship between Martha's and Sun Cruz rather than as defined in the zoning code. Rather than finding the Sun Cruz operation to be an accessory use, the trial court found that the city had found it to be an accessory use and was, therefore, estopped from the subsequent denial of that use as to Sun Cruz III and V.
With respect to the city's crossappeal as to this finding of estoppel, we conclude that there is no reversible error or abuse of discretion. The general rule is that "the doctrine of equitable estoppel may be invoked against a municipality as if it were an individual." Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10, 15 (Fla. 1976). In order to demonstrate the existence of estoppel, a party must establish (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance upon that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance. Lewis v. Dep't of Health and Rehab. Servs., 659 So.2d 1255, 1256-57 (Fla. 4th DCA 1995). Although the party raising estoppel must prove the required elements by clear and convincing evidence, see Watson Clinic, LLP v. Verzosa, 816 So.2d 832 (Fla. 2d DCA 2002), the trial court's findings should not be overturned on appeal *685 unless the findings are clearly erroneous or lacking in evidentiary support. In re D.N.O., 820 So.2d 1064 (Fla. 2d DCA 2002). Here, it cannot be said that the trial court's finding is clearly erroneous or lacking in evidentiary support.
The city correctly argues that the issue of an occupational license, without more, is not representation of material fact. See Dreamland Ballroom and Social Dance Club, Inc. v. City of Fort Lauderdale, 789 So.2d 1099 (Fla. 4th DCA 2001). Here, however, in addition to the occupational license, there was other evidence of approval for the operation of the Sun Cruz ships as permissible accessory uses. There is evidence of extensive communications, negotiations, and agreements between the parties, from 1995 through early 1998, to ensure that the city's requirements (primarily related to parking) were satisfied. For example, the city passed a resolution allowing Mr. Zinkler additional time to obtain permanent parking for the Sun Cruz operation. At considerable expense, Mr. Zinkler, Mr. Boulis, and Sun Cruz obtained additional lots and improved them in reliance on the city's approvals of the gaming boat operation as an accessory use to Martha's Restaurant. There was also competent, substantial evidence of reliance and a detrimental change in circumstances.
The city argues for application of a more stringent standard in order to invoke the doctrine of estoppel on a government entity. See Alachua County v. Cheshire, 603 So.2d 1334 (Fla. 1st DCA 1992). We note that this court has agreed with Alachua that the "theory of estoppel requires `affirmative conduct' by the governmental entity, not merely negligence." Martin County v. Indiantown Enters., Inc., 658 So.2d 1144, 1145-46 (Fla. 4th DCA 1995). However, we find no conflict between that opinion and the trial court's application of estoppel here.
Finally, we cannot conclude that there was an abuse of discretion in the trial court's failing to find an estoppel as to Sun Cruz VI. The trial court could conclude on this record that there was no representation by the city as to material fact as to Sun Cruz VI that is contrary to a later-asserted position. There was never approval of the ship related uses as they relate to Sun Cruz VI. The initial approvals and licenses that were issued as to the other vessels do not, as a matter of law, create an estoppel as to the Sun Cruz VI. Although the city expressed its approval of the Sun Cruz III and V, it never did so for VI, a ship significantly larger in size and capacity.
Furthermore, the city's reason for not issuing the permit as to VI was, in part, because it believed the use had changed. Although not the cited basis for the trial court ruling, it is apparent that Sun Cruz III and V were clearly smaller vessels with capacities of 375 and 480 passengers, respectively. The capacity of the Sun Cruz VI, on the other hand, was for 600 passengers, plus 150 crew. Sun Cruz III was 100' X 30', while Sun Cruz VI is 165' X 65'. Under the Sun Cruz's theory, there would virtually be no limit as to how much its accessory usage of the property could grow.
As to all other issues raised on appeal or cross-appeal, we also find no reversible error or abuse of discretion.
WARNER and FARMER, JJ., concur.